UNITED STATES AND INTERSTATE COMMERCE COMMISSION *v.* ABILENE & SOUTHERN RAILWAY COMPANY ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 456.   Argued March 4, 1924.—Decided May 26, 1924.

1. An order made by a division of the Interstate Commerce Commission being operative, unless stayed by the division or the full Commission pending a rehearing by the latter, (amended Act to Regulate Commerce, §§ 16a, 17 [4],) a suit to enjoin enforcement of such an order is within the jurisdiction of the District Court, and whether relief should be denied until the plaintiff, through application for rehearing, shall have exhausted the administrative remedy, is a matter of judicial discretion. P. 280.

2. In a proceeding under § 15 (6) of the amended Interstate Commerce Act in which the Commission readjusted the divisions of joint rates as between a carrier and its several immediate con-

nections, the other carriers participating in the joint rates, whose shares were left unchanged, were not necessary parties.   P. 282.

3. In determining just divisions, the Commission must consider relative cost of service; whether a particular carrier is an originating, intermediate or delivering line; the efficiency of operation of each carrier; the revenue it requires for operation expenses, taxes and a fair return; public importance of the transportation services involved; and any other facts which would ordinarily, without regard to mile haul, entitle one carrier to a greater or less proportion than another.   P. 284.

4. The financial needs of a weaker road may also be taken into consideration in determining divisions of joint rates.   *Id.*

5. The mere fact that increased divisions allowed a carrier were measured by percentages of the revenues of the several connecting carriers from the joint traffic, does not establish that the division is unjust or guided solely by relative financial ability.   P. 285.

6. An order increasing the divisions of a carrier is not arbitrary merely because the corresponding decreases are confined to the carriers immediately connecting with it, these having the right to apply for further readjustment as between themselves and remoter carriers.   P. 286.

7. An order of the Commission is not invalidated by the mere admission as evidence of matter which in judicial proceedings would be incompetent.   P. 288.

8. But a finding without evidence is beyond the power of the Commission.   *Id.*

9. Reports of carriers on the Commission's files cannot be treated as evidence when not introduced as such, in a proceeding which, though initiated by the Commission primarily to protect the public interest, may result in an order in favor of one carrier as against another.   *Id.*

10. Rule XIII of the Commission does not purport to relieve the Commission from introducing, by specific reference, such parts of the reports of carriers, properly on file, as it wishes to treat as evidence.   P. 289.

11. The right of carriers to insist that consideration by the Commission of matter not in evidence invalidates its order is not lost by their submission of the case without argument or their consent to omission of a tentative report by the examiner.   *Id.*

12. A general notice given at the hearing by an examiner that the Commission would rely upon voluminous annual reports previously

filed with the Commission by plaintiff carriers pursuant to law, *held* tantamount to no notice whatever of evidence used against them.   P. 289.

13. The divisions of joint rates may be determined on the basis of individual rates and divisions, shown by tariffs and division sheets and found sufficiently typical in character and ample in quantity to justify findings as to each division of each rate of every carrier involved, (*New England Divisions Case*, 261 U. S. 184;) but it cannot be inferred because the joint rates and divisions between particular carriers work injustice in the aggregate, that each particular division of each rate is unjust, and in like proportion.   P. 290.

288 Fed. 102, affirmed.

APPEAL from a decree of the District Court perpetually enjoining the enforcement of an order of the Interstate Commerce Commission.

*Mr. Clifford Histed,* with whom *Mr. E. A. Boyd* was on the brief, for Kemper, Receiver of the Kansas City, Mexico & Orient Railroad Company, and Kansas City, Mexico & Orient Railway Company of Texas, interveners.

*Mr. T. J. Norton* and *Mr. M. G. Roberts,* with whom *Mr. Gardiner Lathrop* and *Mr. W. F. Evans* were on the briefs, for appellees.

*Mr. J. Carter Fort,* with whom *Mr. P. J. Farrell* was on the brief, for the Interstate Commerce Commission.

Bringing suit before applying for a rehearing by the full Commission was not the "proper and orderly course," and was not in keeping with "equitable fitness and propriety."  *Prentis* v. *Atlantic Coast Line Co.,* 211 U. S. 210.   This Court should not be called upon to review orders of a division of the Commission, which the full Commission has authority to rehear and reverse (Interstate Commerce Act, §§ 16a, 17[4]), unless application has been made for such rehearing.

The question of the reasonableness of divisions was properly before the Commission.

The Commission, in fixing divisions, may consult, in the public interest, the financial needs of the carriers, and is

not restricted to a consideration of the amount and cost of transportation service performed by each carrier. Interstate Commerce Act, § 15(6); *New England Divisions Case,* 261 U. S. 184; *Dayton-Goose Creek Ry. Co.* v. *United States,* 263 U. S. 456; *United States* v. *Illinois Central R. R. Co.,* 263 U. S. 515.

The fact that the Commission considered certain information shown in the annual reports made by appellees to the Commission, which were not formally introduced in evidence, does not invalidate its order.

During the early part of the hearing, the examiner announced that the Commission would refer to these reports in its consideration of the case. The record leaves no doubt that his statement was well understood at the time.

What the Commission did was not in violation of Rule XIII.

The Commission is not bound by strict and technical rules of evidence such as prevail in the law courts. *Interstate Commerce Comm.* v. *Baird,* 194 U. S. 25; *Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88; *Spiller* v. *Atchison, etc., Ry. Co.,* 253 U. S. 117; *Interstate Commerce Comm.* v. *Chicago, etc., Ry. Co.,* 218 U. S. 88.

The evidence showed, for the period of a year, the amount of service jointly performed by the Orient and each of its connections, and the part of such service performed by each; the joint revenue arising from the joint service and how it was divided.

In this case the Commission came much nearer to specific treatment than in the *New England Divisions Case,* because here it dealt separately with each connection and considered, as between it and the Orient, the relative aggregate services and revenues therefrom and the relative average revenues per ton-mile.

The Commission made adequate provision to correct injustices which might be found to arise from the compre-

hensive manner in which it was necessary to deal with the subject. See *Wisconsin R. R. Comm.* v. *Chicago, etc. R. R. Co.,* 257 U. S. 563; *New England Divisions Case, supra.* It retained jurisdiction of the case for the express purpose of making such modifications of its order.

The Commission's finding did not rest solely upon evidence relating to the financial needs of the Orient and its several connections; the evidence relating strictly to transportation matters tended to show that the Orient's divisions were unjust.

The Court will not examine the facts further than to determine whether there was substantial evidence to sustain the order. *Interstate Commerce Comm.* v. *Union Pacific R. R. Co.,* 222 U. S. 541; *New England Divisions Case,* 261 U. S. 184.

The Commission is an expert body, informed by experience in matters of rates and railroad statistics. Its findings are fortified by presumptions of truth. *O'Keefe* v. *United States,* 240 U. S. 294; *Interstate Commerce Comm.* v. *Chicago, etc. Ry. Co.,* 218 U. S. 88; *New England Divisions Case, supra.*

The order is not arbitrary because the divisions of certain appellees were decreased by greater percentages than the divisions of others.

There is no showing that the Commission's order will result in confiscation. *Knoxville* v. *Knoxville Water Co.,* 212 U. S. 1.

*Mr. Solicitor General Beck, Mr. Blackburn Esterline,* Assistant to the Solicitor General, and *Mr. Clifford Histed,* Special Assistant to the Attorney General, filed a brief on behalf of the United States.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This is an appeal by the United States and the Interstate Commerce Commission from a decree of the federal

court for Kansas which perpetually enjoined the enforce-
ment of an order made by the Commission, on August 9,
1922, under § 15(6) of the Interstate Commerce Act, as
amended by Transportation Act, 1920, c. 91, § 418, 41
Stat. 456, 486. The order relates to the divisions of
interstate joint rates on traffic interchanged, within the
United States, by the Kansas City, Mexico & Orient sys-
tem with thirteen carriers whose lines make direct con-
nection with it. The order provides that on all such
interchanged traffic the existing divisions of these carriers
shall be reduced by a fixed per cent.; and that the Orient
shall receive the amount so taken from its connections.[1]
The order, also, directed the Orient and the connecting
carriers to make, at stated intervals, reports of the finan-
cial results of the divisions ordered; permitted any carrier
to except itself from the order, in whole or in part, by
proper showing; and retained jurisdiction in the Com-
mission " to adjust on basis of such reports the divisions
herein prescribed or stated, if such adjustment shall to
us seem proper." *Kansas City, Mexico & Orient Divi-
sions,* 73 I. C. C. 319, 329.

The order was entered after an investigation into the
financial needs of the Orient system, undertaken by the

---

[1] The percentage of the reduction prescribed in respect to the sev-
eral carriers ranges from 10 to 30 per cent. Thus, the Missouri
Pacific's division was shrunk 20 per cent. It was estimated that
the resulting reduction of its revenues would be $115,789.22. That
amount, added to the existing share of the Orient on this traffic,
would increase its division, on weighted average, over 14%. The
Texas & Pacific's division was also shrunk 20%. The estimated
resulting reduction of its revenues would be $121,140.81. But that
amount added to the existing share of the Orient on this traffic would
increase its division about 25%. The order differs from that upheld
in *New England Divisions Case,* 261 U. S. 184, which prescribed a
percentage increase of the division of the New England roads and
directed that the amount of the increase be taken from the existing
shares of the several connecting carriers.

Commission in April, 1922, pursuant to an application of
the receiver of the Kansas City, Mexico & Orient Railroad
Company and an affiliated Texas corporation. It ap-
peared (and was not denied) that the public interest
demanded continued operation of the railroad; that the
revenues were insufficient to pay operating expenses; that
the operation was being efficiently conducted; and that
unless relief were afforded by increasing the Orient's
division of joint rates and/or otherwise, operation would
have to be suspended and the railroad abandoned.[2]   The
thirteen carriers who brought this suit participated in
the investigation undertaken by the Commission; and
supplied certain statistical information requested of them.
But they introduced no evidence before the Commission;
and the case was submitted there without argument.
None of the connecting carriers made application to be
excepted from the order.  Nor did any of them apply for
a rehearing.  Before the effective date of the order, this
suit was begun.  On application for a temporary injunc-
tion, it was heard by three judges, pursuant to the Act of
October 22, 1913, c. 32, 38 Stat. 208, 220; and a temporary
injunction was granted.  Upon final hearing, motions of
the defendants to dismiss the bill were denied; the injunc-
tion was made permanent; and a rehearing was refused.
288 Fed. 102.

*First.* The Commission moved, in the District Court,
to dismiss the bill on the ground that the suit was pre-
mature.  The contention is that, under the rule of *Prentis*
v. *Atlantic Coast Line Co.,* 211 U. S. 210, orderly pro-
cedure required that, before invoking judicial review, the

---

[2] These needs had been the subject of repeated enquiries by the
Commission in connection with the granting and the renewal of a
loan from the United States under § 210 of Transportation Act, 1920.
*Loan to Kansas City, Mexico & Orient Railroad,* 65 I. C. C. 36;
*ibid,* 265; 67 I. C. C. 23; *Loan to the Receiver of Kansas City,
Mexico & Orient Railroad,* 70 I. C. C. 639; *ibid,* 646.

carriers should have exhausted the administrative remedy afforded by a petition for rehearing before the full Commission. The investigation and order were made, not by the whole Commission, but by Division 4.[3] The order of a division has "the same force and effect . . . as if made . . . by the commission, subject to rehearing by the commission." Interstate Commerce Act as amended, § 17(4). Any party may apply for such rehearing of any order or matter determined. § 16a. Meanwhile, the order may be suspended either by the Division or by the Commission. In this case, the order, by its terms, was not to become effective until 37 days after its entry. There was, consequently, ample time within which to apply for a rehearing and a stay, before the plaintiffs could have been injured by the order.

Division 4 consists of four members. There are eleven members on the full Commission. Under these circumstances, what is here called a rehearing resembles an appeal to another administrative tribunal. An application for a rehearing before the Commission would have been clearly appropriate.[4] The objections to the validity of the order now urged are in part procedural. They include

---

[3] See Interstate Commerce Act as amended, § 17; Annual Report of the Commission (1920), pp. 3–6; *Chicago Junction Case,* 264 U. S. 258, 261, note 3.

[4] See Rules of Practice before the Commission, 1916, pp. 16, 23; 1923, pp. 18, 28. For instances of cases which were heard by a Division and later reheard by the Commission, see: *E. I. Dupont de Nemours Powder Co.* v. *Houston & Brazos Valley R. R. Co.,* 47 I. C. C. 221; 52 I. C. C. 538; *Rockford Paper Box Board Co.* v. *Chicago, M. & St. P. Ry. Co.,* 49 I. C. C. 586; 55 I. C. C. 262; *Steinhardt & Kelly* v. *Erie R. R. Co.,* 52 I. C. C. 304; 57 I. C. C. 369; *Quinton Spelter Co.* v. *Fort Smith & Western R. R. Co.,* 53 I. C. C. 529; 61 I. C. C. 43; *Empire Steel & Iron Co.* v. *Director General,* 56 I. C. C. 158; 62 I. C. C. 157; *John Kline Brick Co.* v. *Director General,* 63 I. C. C. 439; 77 I. C. C. 420.

questions of joinder of parties, of the admissibility of evidence, and of failure to introduce formal evidence.   Most of the objections do not appear to have been raised before the Division.   If they had been, alleged errors might have been corrected by action of that body or by the full Commission.   The order involved also a far-reaching question of administrative power and policy which, so far as appears, had never been passed upon by the full Commission, and was not discussed by these plaintiffs before the Division.   In view of these facts, the trial court would have been justified in denying equitable relief until an application had been made to the full Commission, and redress had been denied by it.   But, in the absence of a stay, the order of a division is operative; and the filing of an application for a rehearing does not relieve the carrier from the duty of observing an order.[5]   Despite the failure to apply for a rehearing, the court had jurisdiction to entertain this suit.   *Prendergast* v. *New York Telephone Co.*, 262 U. S. 43, 48, 49.   Compare *Chicago Rys. Co.* v. *Illinois Commerce Commission*, 277 Fed. 970, 974.   Whether it should have denied relief until all possible administrative remedies had been exhausted was a matter which called for the exercise of its judicial discretion.   We cannot say that, in denying the motion to dismiss, the discretion was abused.

*Second.*   The plaintiffs contend that the order is void, because only a part of the carriers who participated in the joint rates were made parties to the proceedings before the Commission.   Section 15(6) provides that where existing divisions are found to be " unjust . . . as between the carriers parties thereto . . . the Commission shall by order prescribe the just, reasonable, and equitable divisions thereof to be received by the several

---

[5] See Interstate Commerce Act as amended, § 16a.

carriers." More than 170 carriers participated in the joint rates in question. Of these only 39 carriers, whose roads lie wholly west of the Mississippi River, were made respondents before the Commission. The argument is that all who are parties to the through rates are necessarily interested in the divisions of those rates; that failure to join some is not rendered immaterial by the fact that the order made affects directly only those before the Commission, since it would be open to a carrier whose division is reduced, to seek contribution later by a proceeding to readjust the divisions as between it and other carriers who were not parties to the original case; and that an order under this section is invalid unless it disposes completely of the matter in controversy. This argument is answered by what was said in *New England Divisions Case,* 261 U. S. 184, 201, 202. The order, in terms, affects only the 13 carriers whose lines connect directly with the Orient system. Only their divisions were reduced. The shares of all others who participated in the joint rates were left unchanged. All participating carriers might properly have been made respondents. But that was not essential. For it was not necessary that all controversies which may conceivably arise should be settled in a single proceeding. There was no defect of parties in the proceeding before the Commission.[6]

---

[6] The case is wholly unlike those in which it is held that where a shipper attacks a through rate all participating carriers must be made respondents, even though the through rate is made up of separately established elements. The complainant may wish to direct his attack only against one of these. But it is only the through rate which is in issue. It may be reasonable although one of its elements is not. It must stand or fall as an entirety. See *Stevens Grocer Co.* v. *St. Louis, Iron Mountain & Southern Ry. Co.,* 42 I. C. C. 396, 398; *McDavitt Bros.* v. *St. Louis, Brownsville & Mexico Ry. Co.,* 43 I. C. C. 695; *La Crosse Shippers' Assoc.* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 43 I. C. C. 605, 607; *E. I. Dupont de Nemours Powder Co.* v. *Pennsylvania R. R. Co.,* 43 I. C. C. 227. Compare *Star Grain & Lumber*

*Third.* The plaintiffs contend that the order is void because made on a basis which Congress did not and could not authorize.[7] The argument is that Transportation Act, 1920, requires earnings under joint rates to be divided according to what is fair and reasonable as between the parties; that what is so must be determined by the relative amount and cost of the service performed by each of the several railroads; and that the Commission, ignoring this basis of apportionment and making the determination in the public interest, gave to the needy Orient system larger divisions merely because the connecting carriers were more prosperous. Relative cost of service is not the only factor to be considered in determining just divisions. The Commission must consider, also, whether a particular carrier is an originating, intermediate or delivering line; the efficiency with which the several carriers are operated; the amount of revenue required to pay their respective operating expenses, taxes, and a fair return on their railway property; the importance to the public of the transportation service of such carriers; and other facts, if any, which would, ordinarily, without regard to mileage haul, entitle one carrier to a greater or less proportion than another of the joint rate.[8] It is settled that in determining what the divisions should be, the Commission may, in the public interest, take into consideration the financial needs of a weaker road; and that it may be

Co. v. *Atchison, T. & S. F. Ry. Co.,* 14 I. C. C. 364, 371; *Indianapolis Chamber of Commerce* v. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.,* 46 I. C. C. 547, 556; *Johnson & Son* v. *St. Louis-San Francisco Ry. Co.,* 51 I. C. C. 518, 520.

[7] Compare *Southern Pacific Co.* v. *Interstate Commerce Commission,* 219 U. S. 433, 443; *New England Divisions Case,* 261 U. S. 184, 189; *United States* v. *Illinois Central R. R. Co.,* 263 U. S. 515, 525

[8] Compare *New England Divisions Case,* 261 U. S. 184, 193–195; *Wichita Northwestern Ry. Co.* v. *Chicago, Rock Island & Pacific Ry. Co.,* 81 I. C. C. 513, 517.

given a division larger than justice merely as between the parties would suggest " in order to maintain it in effective operation as part of an adequate transportation system," provided the share left to its connections is " adequate to avoid a confiscatory result." *Dayton-Goose Creek Ry. Co.* v. *United States,* 263 U. S. 456, 477; *New England Divisions Case,* 261 U. S. 184, 194, 195. It was not contended before the Commission that a reduction of the carriers' divisions would reduce their rates below what is compensatory.[9] There is in the record no evidence on which it could be determined that any of the divisions ordered will result in confiscatory rates. And there is nothing in the order which prohibits rate increases. Compare *United States* v. *Illinois Central R. R. Co.,* 263 U. S. 515, 526.

The assertion is made that the Commission was guided solely by the relative financial ability of the several carriers. In support of this assertion it is pointed out that the increase ordered of the Orient's share was measured, not by a percentage of its own divisions, as in *New England Divisions Case,* 261 U. S. 184, but by a percentage of the revenues of the several connecting carriers from the joint traffic.[10] It does not follow that such a basis of division would necessarily be unjust to the connecting carriers. The position of the Orient as the originating carrier, or as the delivering carrier, or as an indis-

---

[9] These joint rates had been recently raised. *Increased Rates, 1920, Ex parte 74,* 58 I. C. C. 220. There were reductions later. See *Reduced Rates, 1922,* 68 I. C. C. 676; 69 I. C. C. 138.

[10] This, they illustrate by an hypothetical case of a $1 rate from a station on the Orient to a station on the Santa Fe for which existing divisions are 20 cents to the Orient and 80 cents to the Santa Fe. An increase of the Orient's division 25 per cent. would have reduced the Santa Fe's division only 6¼ per cent.; while the order made, by reducing the Santa Fe's division 25 per cent., increases that of the Orient 100 per cent.

pensable intermediate carrier, might be such that the connecting carrier could not get the traffic but for the service which the Orient renders; and that this factor, together with others ignored in the existing divisions, would require the precise change directed to render the divisions just and reasonable as between the parties. It is, also, pointed out that the contributions to be made by the connecting carriers bore a direct relation to their prosperity. But it does not appear that the Commission based its finding solely on the financial needs of the Orient and the financial condition of the connecting carriers.

Invalidity of the order is urged on the further ground that the Commission made the incidental fact of physical connection with the Orient the sole test for determining which carriers should have their divisions reduced; and that such action is clearly arbitrary. It is true that the order affects, in terms, only the 13 carriers whose lines have direct connection with the Orient; but it does not follow that the action was arbitrary. These connecting carriers have a demonstrable interest in having the operation of the Orient continued. Other carriers doubtless have an interest; but it is less certain. It is open to any of these 13 carriers to institute proceedings before the Commission with a view to securing a partial distribution of their burden among other connecting carriers. Compare *United States* v. *Illinois Central R. R. Co.,* 263 U. S. 515, 526. The basis of division adopted by the Commission is not shown to be, in any respect, inconsistent with the rule declared in *New England Divisions Case,* 261 U. S. 184. Nor is it shown that the Commission ignored any factor of which consideration is required by the act.

*Fourth.* The plaintiffs contend that the order is void because it rests upon evidence not legally before the Commission. It is conceded that the finding rests, in part,

upon data[11] taken from the annual reports filed with the
Commission by the plaintiff carriers pursuant to law; that
these reports were not formally put in evidence; that the
parts containing the data relied upon were not put in
evidence through excerpts; that attention was not other-
wise specifically called to them; and that objection to
the use of the reports, under these circumstances, was
seasonably made by the carriers and was insisted upon.
The parts of the annual reports in question were used as
evidence of facts which it was deemed necessary to prove,
not as a means of verifying facts of which the Com-
mission, like a court, takes judicial notice.  The con-
tention of the Commission is that, because its able ex-
aminer gave notice that " no doubt it will be necessary
to refer to the annual reports of all these carriers," its
Rules of Practice[12] permitted matter in the reports to

---

[11] These include for each of the carriers the data showing for the
year freight tons, one mile; passengers, one mile; all revenue car
miles; all revenue train miles; the total operating revenue; total
operating expenses; net revenue and investment in road and equip-
ment; and they involved calculation of the respective gross revenues
per ton mile, per car mile, per train mile; operating expenses per
train mile, per car mile, per ton mile; net revenue per ton mile, per
car mile, per train mile; the return per $1,000 of investment, on the
gross revenue, the net revenue and the railway operating income; the
percentage of return on the gross revenue, the net revenue and the
operating income.  The net railway operating income for each of the
lines is in the record.

[12] Rule XIII, as in force prior to the Revision of December 10,
1923, provides, in part:

" Where relevant and material matter offered in evidence is em-
braced in a document containing other matter not material or
relevant and not intended to be put in evidence, such document
will not be received, but the party offering the same shall present
to opposing counsel and to the Commission true copies of such
material and relevant matter, in proper form, which may be re-
ceived in evidence and become part of the record.

" In case any portion of a tariff, report, circular, or other docu-
ment on file with the Commission is offered in evidence, the party

be used as freely as if the data had been formally introduced in evidence.

The mere admission by an administrative tribunal of matter which under the rules of evidence applicable to judicial proceedings would be deemed incompetent does not invalidate its order. *Interstate Commerce Commission* v. *Baird,* 194 U. S. 25, 44; *Spiller* v. *Atchison, Topeka & Santa Fe Ry. Co.,* 253 U. S. 117, 131. Compare *Bilokumsky* v. *Tod,* 263 U. S. 149, 157. But a finding without evidence is beyond the power of the Commission. Papers in the Commission's files are not always evidence in a case. *New England Divisions Case,* 261 U. S. 184, 198, note 19. Nothing can be treated as evidence which is not introduced as such. *Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88, 91, 93; *Chicago Junction Case,* 264 U. S. 258. If the proceeding had been, in form, an adversary one commenced by the Orient system, that carrier could not, under Rule XIII, have introduced the annual reports as a whole. For they contain much that is not relevant to the matter in issue. By the terms of the rule, it would have been obliged to submit copies of such portions as it deemed material; or to make specific reference to the exact portion to be used. The fact that the proceeding was technically an investigation instituted by the Commission

offering the same must give specific reference to the items or pages and lines thereof to be considered. The Commission will take notice of items in tariffs and annual or other periodical reports of carriers properly on file with it or in annual, statistical, and other official reports of the Commission. When it is desired to direct the Commission's attention to such tariffs or reports upon hearing or in briefs or argument it must be done with the precision specified in the second preceding sentence. In case any testimony in other proceedings than the one on hearing is introduced in evidence, a copy of such testimony must be presented as an exhibit. When exhibits of a documentary character are to be offered in evidence copies should be furnished opposing counsel for use at the hearing."

would not relieve the Orient, if a party to it, from this requirement. Every proceeding is adversary, in substance, if it may result in an order in favor of one carrier as against another. Nor was the proceeding under review any the less an adversary one, because the primary purpose of the Commission was to protect the public interest through making possible the continued operation of the Orient system. The fact that it was on the Commission's own motion that use was made of the data in the annual reports is not of legal significance.

It is sought to justify the procedure followed by the clause in Rule XIII which declares that the "Commission will take notice of items in tariffs and annual or other periodical reports of carriers properly on file". But this clause does not mean that the Commission will take judicial notice of all the facts contained in such documents. Nor does it purport to relieve the Commission from introducing, by specific reference, such parts of the reports as it wishes to treat as evidence. It means that as to these items there is no occasion for the parties to serve copies. The objection to the use of the data contained in the annual reports is not lack of authenticity or untrustworthiness. It is that the carriers were left without notice of the evidence with which they were, in fact, confronted, as later disclosed by the finding made. The requirement that in an adversary proceeding specific reference be made, is essential to the preservation of the substantial rights of the parties.[13]

The right of the carriers to insist that the consideration of matter not in evidence invalidates the order was not lost by their submission of the case without argument and

---

[13] Its observance will not hamper the Commission in the performance of its duties. For, if the materiality of some fact in a report is not discovered by the Commission until after the close of the hearing, there is power to reopen it for the purpose of introducing the evidence.

by their acquiescing in the suggestion that the presentation of a tentative report by the Examiner be omitted. While the course pursued denied to the Commission the benefit of that full presentation of the contentions of the parties which is often essential to the exercise of sound judgment, it cannot be construed as a waiver by the carriers of their legal rights. The general notice that the Commission would rely upon the voluminous annual reports is tantamount to giving no notice whatsoever. The matter improperly treated as evidence may have been an important factor in the conclusions reached by the Commission. The order must, therefore, be held void.

*Fifth.* A further objection of the carriers should be considered. They point out that the record does not contain any tariffs showing the individual joint rates, or any division sheets showing how these individual joint rates are divided, nor any information concerning the amount of service performed by the Orient and its several connections under such individual joint rates. As justification for this omission, it is argued that there are in the record exhibits, furnished by the several carriers, containing data from which the Commission could reach a conclusion as to whether or not the divisions, taken as a whole, were equitable as between the Orient and its several connections [14]; that in a general rate case, evidence

---

[14] The exhibits showed for the year 1921, the volume of traffic moving on joint rates and interchanged between the Orient and each of its direct connections; the part of the joint service performed by the Orient and the part performed by its connection; the revenue arising from the joint service, and how that revenue was divided. For example: The exhibits showed that, during 1921, the Santa Fe and the Orient interchanged 26,278 tons of freight; that with respect to such freight the Orient performed 8,162,294 ton miles of transportation and the Santa Fe 5,793,098 ton miles; that the revenue arising from this joint service was $218,827.71, of which the Orient received $106,889.59 and the Santa Fe $111,938.12; that the per ton mile revenue of the Orient was 1.309 cents and the per ton mile revenue of the Santa Fe 1.932 cents.

"deemed typical of the whole rate structure" will support a finding as to each rate in the structure by raising a rebuttable presumption concerning each rate; that typi-cal "evidence" in this sense means, not evidence directly representative of every individual rate, but evidence tending to show the general situation; that a like presumption arises in a division case; that the data dealing with the traffic in the aggregate, which was furnished by the exhibits, constituted such typical evidence; that, in this proceeding, information concerning individual rates and divisions was not essential; and that the course pursued by the examiner is, in substance, that upheld in the *New England Divisions Case,* 261 U. S. 184, 196–199.

The argument is not sound. The power conferred by Congress on the Commission is that of determining, in respect to each joint rate, what divisions will be just. Evidence of individual rates or divisions, said to be typical of all, affords a basis for a finding as to any one. But averages are apt to be misleading. It cannot be inferred that every existing division of every joint rate is unjust as between particular carriers, because the aggregate result of the movement of the traffic on joint rates appears to be unjust. These aggregate results should properly be taken into consideration by the Commission; but it was not proper to accept them as a substitute for typical evidence as to the individual joint rates and divisions. In the *New England Divisions Case,* tariffs and division sheets were introduced which, in the opinion of the Commission were typical in character, and ample in quantity, to justify the findings made in respect to each division of each rate of every carrier. A like course should have been pursued in the proceeding under review.

*Affirmed.*