255 F.2d 611
 BROWN-PACIFIC-MAXON COMPANY, a corporation, et al., *
Plaintiffs-Appellants,
v.
Walter J. TONER, Deputy Commissioner of the 10th
Compensation District of the United States
Department of Labor, Bureau of
Employees' Compensation,
Defendant-Appellee.
*Employers Mutual Liability Insurance Company of Wisconsin,
a corporation.
 No. 12198.
 United States Court of Appeals Seventh Circuit.
 May 16, 1958.
 
 Edward B. Hayes, William K. Johnson, Warren C. Ingersoll, Chicago, Ill., Lord, Bissell & Brook, Chicago, Ill., of counsel, for appellants.
 Robert Tieken, U.S. Atty., John Peter Lulinski, Asst. U.S. Atty., Chicago, Ill., for appellee.
 Before MAJOR, SCHNACKENBERG and PARKINSON, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Plaintiffs have appealed from a summary judgment in favor of defendant.
 
 
 2
 On December 16, 1955, plaintiffs filed a complaint, pursuant to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. 921, to set aside an order[1] against plaintiffs, making an award in favor of Joseph Blankenship for compensation sought under that act. 33 U.S.C.A. 901 et seq.
 
 
 3
 The complaint charged, inter alia, that the order and award 'were (all as appears from review of the whole record), (1) arbitrary, capricious, an abuse of discretion, and otherwise contrary to law; and even (2) unsupported by substantial evidence.'
 
 
 4
 These charges were denied by defendant's answer, filed March 14, 1956, in which defendant stated that the office of the United States district attorney would voluntarily turn over to the court all papers, records, etc., requested in the complaint, without a court order.
 
 
 5
 It was alleged in an affidavit filed by plaintiffs that, after the filing of their complaint, they were furnished by the office of said United States district attorney with what was represented to be the file of the defendant, and that therein appeared the documents which we hereinafter set forth.
 
 
 6
 The record shows that the proceeding before defendant was initiated by a claim filed by Blankenship on December 13, 1954, in which he stated that in injured his back in December 1953 and again in May 1954, resulting in a ruptured disk. On December 27, 1954, plaintiffs' answer was filed with defendant, stating 'It is denied that the present condition of the claimant is a result of this injury.'
 
 
 7
 The parties have stipulated which papers constitute the official record of the proceedings before defendant.
 
 
 8
 In addition, certain unofficial correspondence of defendant appears. None of this correspondence was offered in evidence before defendant nor was it included within the official record of the proceedings. Plaintiffs' did not receive any notice of this correspondence or of a consultation between the defendant and his medical advisor revealed therein.
 
 
 9
 After the papers above referred to were produced, and before the court had heard a motion for summary judgment filed by defendant, plaintiffs filed a notice (on April 17, 1956) that they would take the deposition of defendant. On April 19, 1956 defendant moved the court to 'vacate' said notice of deposition. On May 2, 1956, plaintiffs addressed three motions to the court: (1) a motion to amend the complaint[2] to conform to the evidence discovered in defendant's file and to allege the unlawfulness and unconstitutionality of defendant's conduct outside of the official record; (2) a motion for an order upon defendant to appear for the taking of his deposition, supported by an affidavit alleging, inter alia,
 
 
 10
 '* * * plaintiffs cannot now present affidavits upon personal knowledge in support of their motion for summary judgment or in opposition to defendant's motion for summary judgment, for the reason that the evidence pertaining thereto is within the possession and control of defendant and not available to plaintiffs in the absence of such discovery as prayed for;
 
 
 11
 '3. That plaintiffs have reason to believe that upon the discovery prayed for evidence will or may be adduced to support plaintiffs' said motions;
 
 
 12
 '4. That defendant did not appear at the time and place specified in the notice of deposition heretofore filed herein; * * *.'
 
 
 13
 and (3) a motion for summary judgment on the original complaint or alternatively the amended complaint upon the completion of the taking of the deposition of the defendant.
 
 
 14
 On September 12, 1956, the court denied plaintiffs' motion for leave to amend their complaint and to take defendant's deposition.
 
 
 15
 On March 11, 1957, plaintiffs moved the court to reconsider its rulings, and in support of the motion, submitted copies of the pertinent documents, as follows:
 
 
 16
 1. Letter dated March 10, 1955 by F. Paul Thieman, Jr., an attorney for Blankenship, addressed to defendant, reading:'Dear Mr. Toner:
 
 
 17
 'Your letter of February 10, 1955, in regard to the above matter caused me a great deal of concern. In order to approach this problem in a direct manner, as is possible, I took the liberty of forwarding your letter to Dr. Averill Stowell, who is the neurosurgeon who treated Mr. Blankenship for his injury. Dr. Stowell is one of the most outstanding neurosurgeons in this part of the country.
 
 
 18
 'I am enclosing herewith the letter that Dr. Stowell addressed back to my partner, which, I think is self-explanatory.
 
 
 19
 'I do not think the doctor's letter states to you the sequence of events that led up to the injury, and which are substantially as follows. When Mr. Blankenship arrived in the United States, he came to Tulsa, then went to the State of Arkansas some four or five days later to visit his and his wife's relatives, and while eating breakfast one morning at his relative's home, he coughed, and when he did he felt this severe pain in his back which lead to a paralysis of the lower extremity of his body.
 
 
 20
 'From the time that Mr. Blankenship arrived in the United States to the time that he received this injury, he had not been in the employment of any person nor had he been engaged in any sort of strenuous exercise of any kind or nature.
 
 
 21
 'Therefore, our position in this matter, and which we will substantiate by medical witness, is that the two injuries received by Mr. Blankenship did produce the weakening of the ligaments of the back, which lead to the rupture of the intervertebral disk.
 
 
 22
 'Will you kindly give this matter your consideration and advise when a formal hearing could be heard to present this matter.
 
 
 23
 'Sincerly yours, '(s) F. Paul Thieman Jr. 'F. Paul Thieman Jr.
 
 
 24
 'Enc: copy of letter'
 
 
 25
 2. The enclosure was a letter dated March 8, 1955 from Averill Stowell, M.D., to Dean H. Smith, one of the Blankenship attorneys, reading:
 
 
 26
 'Dear Mr. Smith:
 
 
 27
 'We appreciated very much your letter of March 2, 1955.
 
 
 28
 'I think it may be stated with some certainly that Mr. Joseph Blankenship, as noted in previous letters to you, sprained his back in December, 1953 and was off work for one week at this time with a probable protrusion of the intervertebral disk of mild degree at this time. The patient, three months before, that is in June, 1954, again twisted his back which resulted in his being off work for four days. The sudden onset of the rupture of the intervertebral disk as contrasted with the protrusions, which obviously 'fell back into line', started in September, 1954 and were not directly caused by any injury. We feel, however, that the two injuries in December, 1953 and June, 1954 did produce definite weakening of the posterior ligament and allowed the 'straw that broke the camel's back', that is the cough, to produce a marked rupture of the intervertebral disk.
 
 
 29
 'In going over the whole letter, I think it should be stated that if it can be proved that this man was off work for a total of 11 days, complaining of low back pain following injuries, that there is some definite indirect evidence that the rupture of the intervertebral disk occurring in September, 1954 was secondary to these injuries.
 
 
 30
 'I think that probably the best situation would be to send copies of my correspondence to Walter J. Toner, Deputy Commissioner, and we could further discuss the problem in the event that there are any further questions.
 
 
 31
 'Very sincerely yours, '(s) A. Stowell 'Averill Stowell, M.D.'3. A letter dated March 14, 1955 by defendant, addressed to attorneys Smith & Thieman, reading:
 
 
 32
 'Gentlemen:
 
 
 33
 'This office acknowledges receipt of your communication of March 10, 1955 together with the report of Dr. Averill Stowell, a neurosurgeon.
 
 
 34
 'We are referring the report of Dr. Stowell to our medical advisor with the record for his opinion as to the causal relationship of the claimant's present condition to the episodes of 1953 and 1954. * * *.'
 
 
 35
 On September 11, 1957, the district court denied the motion for reconsideration and 'plaintiff's' motion for summary judgment. In a memorandum, the district court said, inter alia:
 
 
 36
 '* * * The record, which is before this court, consists of the testimony of the claimant Joseph Blankenship and the depositions of Drs. John E. McDonald and Averill Stowell.[3] he (Blankenship) was referred to Dr. Averill Stowell, a Tulsa physician specializing in surgery, particularly of the back and nerves. The doctor examined and treated him, and performed an operation on September 30, 1954; he re-examined the patient on September 29, 1955.
 
 
 37
 It was the opinion of Dr. Stowell that the claimant was subject to a 'twenty-five percent disability', and that this condition was the result of the injuries suffered on Guam. The testimony of Dr. McDonald, who had examined claimant in 1951 before his employment began and again in September, 1955, indicates that in his opinion the disability is slight and could have resulted from previous arthritis rather than from the injuries.
 
 
 38
 The Deputy Commissioner, apparently accepting the opinion of Dr. Stowell and the testimony of the claimant, found that the injuries in the course of the employment were the cause of a presently existing partial permanent disability, and made an award accordingly. * * *'
 
 
 39
 The district judge said that 'the compensation order must be upheld if it is 'supported by substantial evidence".
 
 
 40
 The summary judgment order was entered on October 3, 1957 and is in favor of defendants.
 
 33 U.S.C.A. 921(b) provides:
 
 41
 'If not in accordance with law, a compensation order may be * * * set aside, * * * through injunction proceedings, * * * brought by any party in interest against the deputy commissioner making the order, * * *.'
 
 
 42
 In Bassett v. Massman Const. Co., 8 Cir., 120 F.2d 230, at page 233, the court said: 'subdivision (b) covers review.' In Crowell v. Benson, 285 U.S. 22, at page 46, 52 S.Ct. 285, at page 290, 76 L.Ed. 598, involving a decree of a district court enjoining the enforcement of an award of compensation which had been made by a deputy commissioner under this act, the court said: a constitutional right properly asserted. contains no express limitation attempting to preclude the court, inproceedings to set aside an order as not in accordance with law, from making its own examination and determination of facts whenever that is deemed to be necessary to enforce a constitutional right property asserted. See Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 289, 40 S.Ct. 527, 528, 64 L.Ed. 908; Ng Fung Ho v. White, 259 U.S. 276, 284, 285, 42 S.Ct. 492, 66 L.Ed. 938; Prendergast v. New York Telephone Co., 262 U.S. 43, 50, 43 S.Ct. 466, 67 L.Ed. 853; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 443, 444, 50 S.Ct. 220, 74 L.Ed. 524; Phillips v. Commissioner, 283 U.S. 589, 600, 51 S.Ct. 608, 75 L.Ed. 1289. As the statute is to be construed so as to support rather than to defeat it, no such limitation is to be implied, Panama Railroad Co. v. Johnson, 264 U.S. 375, 390, 44 S.Ct. 391, 68 L.Ed. 748.
 
 
 43
 '* * * The use of the administrative method for these purposes, assuming due notice, proper opportunity to be heard, and that findings are based upon evidence, falls easily within the principle of the decision sustaining similar procedure against objections under the due process clauses of the Fifth and Fourteenth Amendments.
 
 
 44
 'The statute provides for notice and hearing, and an award made without proper notice, or suitable opportunity to be heard, may be attacked and set aside as without validity. * * * The statute, however, contemplates a public hearing, and regulations are to require 'a record of the hearings and other proceedings before the deputy commissioner.' Section 23(b), 33 U.S.C.A. 923(b). This implies that all proceedings by the deputy commissioner upon a particular claim shall be appropriately set forth, and that whatever facts he may ascertain and their sources shall be shown in the record and be open to challenge and opposing evidence. Facts conceivably known to the deputy commissioner, but not put in evidence so as to permit scrutiny and contest, will not support a compensation order. * * * An award not supported by evidence in the record is not in accordance with law. But the fact that the deputy commissioner is not bound by the rules of evidence which would be applicable to trials in court or by technical rules of procedure, section 23 * * * (a), does not invalidate the proceeding, provided substantial rights of the parties are not infringed. * * *'
 
 
 45
 At page 49 of 285 U.S. at page 292 of 52 S.Ct., the court added:
 
 
 46
 '* * * The Congress did not attempt to define questions of law, and the generality of the description leaves no doubt of the intention to reserve to the Federal court full authority to pass upon all matters which this Court had held to fall within that category. There is thus no attempt to interfere with, but rather provision is made to facilitate, the exercise by the court of its jurisdiction to deny effect to any administrative finding which is without evidence, or 'contrary to the indisputable character of the evidence,' or where the hearing is 'inadequate,' or 'unfair,' or arbitrary in any respect. * * *.'
 
 
 47
 It added, 285 U.S. at page, 60, 52 S.Ct. at page 296:
 
 
 48
 'In the present instance, the argument that the Congress has constituted the deputy commissioner a fact-finding tribunal is unaviling, as the contention makes the untenable assumption that the constitutional courts may be deprived in all cases of the determination of facts upon evidence even though a constitutional right may be involved. * * *.'
 
 
 49
 The administrative procedure act[4] recognizes the principles which we now discuss.
 
 
 50
 1004(c), which is applicable to defendant herein, provides: '* * * no such officer shal consult any person or party on any fact in issue unless upon notice and opportunity for all parties to participate; * * *.'
 
 
 51
 1009(e) provides: 'So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, * * *. It shall * * * hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; * * *.'
 
 
 52
 A well-reasoned opinion is in English v. City of Long Beach, 35 Cal.2d 155, 217 P.2d 22, which appears with annotations in 18 A.L.R.2d 547. Police partrolman English was dismissed from his position. It was held that he was deprived of a fair hearing inasmuch as the civil service board of Long Beach, California, in reaching its decision, relied upon evidence taken outside the hearing and outside the presence of English or his attorney. The court said, in 217 P.2d at page 24:
 
 
 53
 'The principal question is whether English was deprived of a fair trial. * * * The action of such an administrative board exercising adjudicatory functions when based upon information of which the parties were not apprised and which they had no opportunity to controvert amounts to a denial of a hearing. * * * Administrative tribunals which are required to make a determination after a hearing cannot act upon their own information, and nothing can be considered as evidence that was not introduced at a hearing of which the parties had notice or at which they were present. * * * The fact that there may be substantial and properly introduced evidence which supports the board's ruling is immaterial. * * * A contrary conclusion would be tantamount to requiring a hearing in form but not in substance, for the right of a hearing before an administrative tribunal would be meaningless if the tribunal were permitted to base its termination upon information received without the knowledge of the parties. A hearing requires that the party be apprised of the evidence against him so that he may have an opportunity to refute, test, and explain it, and the requirement of a hearing necessarily contemplates a decision in light of the evidence there introduced. * * *
 
 
 54
 'Since the board, in arriving at its decision sustaining the order dismissing English, relied upon information taken outside the hearing, which English had no opportunity to refute, the trial court properly concluded that he was denied a fair hearing.'
 
 
 55
 In United States v. Abilene & Southern Ry. Co., 265 U.S. 274, at page 288, 44 S.Ct. 565, at page 569, 68 L.Ed. 1016, the court said: '* * * Nothing can be treated as evidence which is not introduced as such. * * *.'
 
 
 56
 We held that defendant's reception of evidence, out of the presence of plaintiffs and without notice to them or their attorneys, if proved, deprived plaintiffs of a fair hearing, in violation of due process under the 5th amendment to the constitution of the United States, as well as the statutory provisions hereinbefore quoted. The district court erred in not permitting the plaintiffs an opportunity to prove in that court the allegations of the proffered amendment to their complaint. Therefore, it should permit the amendment to be made, and the deposition of defendant to be taken, as requested. A hearing on the complaint, as amended, should be held and a decree entered in conformity with the facts there proved. For those purposes, the judgment order of October 3, 1957 is reversed and this cause is remanded for further proceedings not inconsistent with the views herein expressed.
 
 
 57
 Reversed and remanded for further proceedings.
 
 
 
 [1]
 The order was entered by defendant, who is within the jurisdiction of the district court. 42 U.S.C.A. 1653
 
 
 [2]
 By adding paragraph 3 1/2, reading:
 'The said purported compensation order and award of compensation entered by defendant Walter J. Toner, Deputy Commissioner were (as will more fully appear from things and matters not part of the official record herein) unlawful and otherwise contrary to law. And, in particular, complainants complain of the following:
 '(a) The same were entered contrary to constitutional right, power, privilege and immunity; and among other things, particularly the due process requirement of Amendment V of the Constitution of the United States;
 '(b) The same were entered in excess of statutory jurisdiction authority and limitations;
 '(c) The same were entered without observance of procedure required by law;
 '(d) The defendant went outside the record to the prejudice of plaintiffs in reaching his conclusions on the facts and in making said compensation order and award.'
 
 
 [3]
 The record before the court actually contained two documents citing medical examinations of Blankenship, which were introduced by plaintiffs and were in the record before the district court
 
 
 [4]
 5 U.S.C.A. 1001 et seq