Jones, Ohief Judge,
delivered the opinion of the court:
This is a suit for the recovery of back pay. The plaintiff, *189 in a reduction-in-force action, was separated from civilian service in the Department of the Air Force. He alleges that said separation was arbitrary, capricious, and discriminatory.
The following facts appear from the pleadings and the attached affidavits.
Plaintiff, a veteran, who was an indefinite civilian employee of the Department of the Air Force at the McClellan Air Force Base in the State of California at the time the issues in this case arose, was notified of the proposed separation by a letter dated March 15, 1955. A number of other employees were given similar notices about the same time. The basis of separation was a reduction in force. . At the time plaintiff’s employment was as a Mobile Equipment Spray Treater, WB-7, at Sacramento, California. His rate of pay was $1.97 per hour.
The letter to plaintiff informed him that because of a lack of work his last active-duty day would be March 80, 1955, but that he would be carried on the rolls through April 15, 1955. Subsequently the notice was amended to make the date of separation April 16,1955.
The letter also informed him of his employment status, the procedure he should follow in obtaining other Federal employment, and his right to appeal; that if he felt the proposed action was not in compliance with the Department of the Air Force and Civil Service rules and regulations, his appeal should be to the Eegional Director, Twelfth TJ. S. Civil Service Eegion, within ten days from receipt of the letter. The address of the Eegional Director at San Francisco, California, is also set out in the letter.
Apparently no appeal was taken to the Civil Service Commission. Plaintiff attaches a copy of an undated letter to the Eegional Director in which a desire to appeal is stated, but it is disclosed by the pleadings that the records of the Commission’s Twelfth Eegional Office showed no record of an appeal being taken from the 1955 reduction in force here involved. The review of the Commission’s files revealed that a number of complaints concerning reduction-in-force activity at McClellan Air Force Base in 1955 had been sent to the Office of the President by unnamed “Biffed Veterans”. *190 The Twelfth Regional Office made an. investigation at that time (1955) and determined that the complaints were unfounded. The Regional office did not receive reduction-in-force appeals from any of the individuals who had complained to the White House. It was found that one of the complainants involved was the plaintiff, Peter E. Ray.
On May 27, 1957, plaintiff’s attorney wrote to the Civil Service Commission in Washington, D. C., requesting a hearing on Mr. Ray’s dismissal. The Commission’s Board of Appeals and Review in a letter dated June 15, 1957, informed plaintiff’s counsel that proper procedure had been followed in Mr. Ray’s case, and that a review of the official personnel folder of Mr. Ray showed that he was separated from the position of Mobile Equipment Spray Treater on April 16, 1955, as a result of reduction in force; that he was a preference-eligible employee serving in an indefinite appointment at the time of this action and was therefore listed in Retention Group IIX-A with 11 retention points.
The plaintiff sets out in his petition the following grounds for holding his separation from the service to be invalid:
On or. about the said 16th day of April, 1955, defendant, without justification or cause therefor on the part of petitioner, discharged petitioner as a civilian employee of defendant, and on said date petitioner ceased to be an employee of defendant and to receive wages from defendant; that such discharge was arbitrary and capricious and as a result of discrimination against petitioner.
Defendant pleads that (1) plaintiff’s claim is barred for failure to pursue his administrative remedy within the time permitted; (2) that due to his failure to file his claim for back pay for a period of more than two years after his separation, during which time the Govei’nment’s potential liability was increasing, the claim is barred by laches; (3) that pursuant to a telegram dated March 24, 1955, to the President of the United States signed by “Riffed Veterans” of McClellan Air Force. Base Vehicle Section, a request was made for an investigation of the agency’s reduction-in-force action of March 30, 1955; and that pursuant thereto the Twelfth Regional Office of the Civil Service Commission made an investigation of the reduction-in-force action.
*191 It is true that an appeal to the Civil Service Commission for an adjustment of grievances before resorting to the courts, is not in all circumstances mandatory. But unless the circumstances are unusual, this is the course that should be pursued. The Civil Service Commission was the agency set up by the Congress for the express purpose of hearing the grievances of employees. The Congress conferred this jurisdiction upon the Commission. It did not confer this jurisdiction on the courts except where the Commission had acted unlawfully. This matter is discussed in the case of Adler, et al., v. United States, 134 C. Cls. 200, and has been stated in a number of other cases, including Martilla v. United States, 118 C. Cls. 177. It was set out again in the case of Pollard v. United States, 138 C. Cls. 569.
It has been held that the question of whether the court should deny relief until all possible administrative remedies have been exhausted is a matter which calls for the exercise of the court’s judicial discretion. United States v. Abilene & Southern Railway Company, et al., 265 U. S. 274.
While in unusual circumstances the court, in its discretion, may not require an exhaustion of voluntary administrative procedure, it is altogether desirable in all cases that action on claims for back pay should be taken as promptly as possible, since with the passage of time the Government’s obligations would be increased. The reason for this viewpoint is well discussed in the leading case of United States ex rel. Arant v. Lane, 249 U. S. 367, 372.[1]
It is not necessary, however, to decide this case on the issue of latches. Section 12 of the Veterans’ Preference Act *192 of 1944, 58 Stat. 387, 390, 5 U. S. C. § 861 (1952) provides, in part, as follows:
In any reduction in personnel in any civilian service of any Federal agency, competing employees shall be released in accordance with Civil Service Commission regulations which shall give due effect to tenure of employment, military preference, length of service, and efficiency ratings:, * * *.
Pursuant to this provision of the statute Civil Service regulations were issued.[2] Under these regulations three groups of employees were provided for.
Group I covers career employees,; Group II, career conditional employees; and Group III, generally speaking, includes indefinite employees, employees serving under temporary appointments, and employees serving under non-status, non-temporary appointments. Manifestly plaintiff’s employment falls within Group III.
There is no showing either in the pleadings or in the affidavits attached to the pleadings that there was any discrimination as between plaintiff and any of the other indefinite employees included in Group III.
In addition, notwithstanding there was apparently no effort on the part of plaintiff to make regular timely appeal to the Civil Service Commission, the Commission did make a thorough investigation of the reduction-in-force order in question and, after such investigation, reached the conclusion that the “riff” action in this case was procedurally proper. This is shown by defendant’s exhibit 16. In fact, plaintiff makes no assertion in his petition or brief that there was procedural error.
When the entire record as set out in the pleadings, the affidavits attached thereto, and the briefs of the respective parties is considered, it is apparent that there is no sufficient *193 allegation or showing of arbitrary or capricious action to justify a court in reaching the conclusion that the action of the agency should be set aside.
With a growing nation in a rapidly changing world, where new inventions are being produced and new mysteries are being solved, it is inevitable that new Government agencies will be established and others enlarged. If at the same time the officials are not permitted to reduce or dismantle agencies that are no longer useful or whose work has been outgrown there will be grave danger of overlapping activities. If in these circumstances all the agencies, some of which represent discarded or obsolescent activities, are to be kept at full strength regardless of need, then the Government is in danger of becoming topheavy and ultimately being overwhelmed.
Certainly, when the work of an agency has been outgrown or the need for its output has been reduced there should be comparatively free opportunity to reduce the forces engaged in its operation.
In this case in which plaintiff sues for loss of pay because of reduction in this particular activity of the affected department, there is no allegation that the full force at that particular point should have been kept, no indication that it was not actually reduced, and no detailed allegations as a basis for the charge of arbitrary action. In fact, the allegations of arbitrary and capricious action are not sufficient to raise the issue in proper fashion. Rule 9 (b) (iii), Rules of the United States Court of Claims. In the light of the facts as disclosed by the entire record in the case it would be a sheer waste of time and an unnecessary expense to the litigants, the attorneys, and the court to refer the case to a commissioner for the taking of evidence.
The defendant’s motion for summary judgment is granted, and the plaintiff’s petition will be dismissed.
It is so ordered.
LaeakORe, Judge; MaddeN, Judge; and Whitaker, Judge, concur.

 “When a public official is unlawfully removed from office, whether from disregard of the law by his superior or from mistake as to the facts of his ease, obvious considerations of public policy make it of first importance that he should promptly take the action requisite to effectively assert his rights, to the end that if his contention be justified the Government service may be disturbed as little as possible and that two salaries shall not be paid for a single service.
“Under circumstances which rendered his return to the service impossible, except under the order of a court, the relator did nothing to effectively assert his claim for reinstatement to office for almost two years. Such a long delay must necessarily result in changes in the branch of the service to which he was attached and in such an accumulation of unearned salary that, when unexplained, the manifest inequity which would result from reinstating him renders the application of the doctrine of laches to his case peculiarly appropriate in the interests of justice and sound public policy.”

 5 C. F. R. §2.114 (h) (1949).
Section 2.115 (a), 15 Fed. Reg. 7747 (November 15, 1950).
Section 20.4 (c), 19 Fed. Reg. 8619 (December 16, 1954, effective January 23, 1955).
Section 20.6 (b), 19 Fed. Reg. 8620 (December 16, 1954, effective January 23, 1955).
Executive Order No. 10577, Section 201 (a), 19 Fed. Reg. 7521, 7525 (November 22, 1954);