## NORTHERN PACIFIC RAILWAY COMPANY ET AL. *v.* THE DEPARTMENT OF PUBLIC WORKS OF THE STATE OF WASHINGTON, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF WASHINGTON.

No. 371.   Argued March 10, 11, 1925.—Decided April 13, 1925.

1. A judgment of a state supreme court sustaining an order of a state commission which fixed intrastate railroad rates, and overruling the railroad's claim that the rates were confiscatory and based on arbitrary findings of fact unsupported by evidence, *held* reviewable by writ of error. P. 42.

2. An administrative order fixing railroad rates upon a finding without evidence or made upon evidence that clearly does not support it, is an arbitrary act against which courts will afford relief. P. 44.

3. In a hearing to determine rates for several carriers on intrastate transportation of logs in carload lots, the average haul of which by each carrier was 32 miles, the carriers introduced persuasive evidence that existing rates did not yield any return on the property employed nor defray the operating costs of the traffic and its proportionate taxes; but the state administrative body, without attacking the proof or attempting to show by reasonably specific and direct evidence what the actual operating costs of the particular traffic were to the several carriers, lowered the rates on the basis of a composite figure, created largely from data in the carriers' reports and their exhibits in the case, representing the weighted average operating cost per thousand gross-ton-miles of all revenue freight carried on the carriers' railroad systems, including main line and branch line freight, interstate and intrastate, car-

load and less than carload, indiscriminately—*Held* that this was a fundamental error and a denial of due process of law. P. 42.

4. The invalidity of an order arbitrarily lowering rates which the evidence shows are confiscatory is not avoided by making it for an experimental period. P. 45.

125 Wash. 584, reversed.

ERROR to a judgment of the Supreme Court of Washington affirming an order of the Department of Public Works, in a suit brought by the above named and three other railroads to set the order aside.

*Mr. C. W. Bunn,* for plaintiffs in error.

*Mr. F. M. Dudley,* with whom *Mr. O. W. Dynes* was on the brief, for Chicago, Milwaukee & St. Paul Railway Company.

*Messrs. Raymond W. Clifford* and *Scott Z. Henderson,* for defendants in error. *Mr. John H. Dunbar,* Attorney General of the State of Washington, and *Mr. Stephen V. Carey,* were on the brief.

*Messrs. George T. Reia* and *Lorenzo B. da Ponte* were on the brief, for Northern Pacific Railway Company; *Messrs. Frederic G. Dorety* and *Thomas Balmer* for the Great Northern Railway Company; and *Messrs. Arthur C. Spencer* and *William A. Robbins* for the Oregon-Washington Railroad & Navigation Company.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

The intrastate transportation of saw logs in car load lots constitutes a large part of all of the intrastate freight traffic in Washington on each of the four transcontinental railroad systems by which much of that service is performed.[1] Prior to federal control the rates had, with

---

[1] These are the Northern Pacific, the Great Northern, the Chicago, Milwaukee and St. Paul, and the Oregon-Washington of the Union Pacific System.

few exceptions, been initiated from time to time by individual tariffs of the several carriers. In 1918 the Director General of Railroads made a horizontal increase of 25 per cent. In 1920, after the decision in *Ex parte 74, Increased Rates, 1920,* 58 I. C. C. 220, a further increase of 25 per cent. was authorized by the Public Service Commission of the State. Complaint was made that some of the rates as so raised were excessive and discriminatory; and that the rate structure lacked uniformity.

On December 28, 1920, the Public Service Commission instituted a proceeding before itself for the purpose of investigating the log rates and making such order thereon as the facts found should warrant. Hearings were duly had in which shippers and the four transcontinental carriers participated. Much evidence was introduced. The carriers insisted that the existing rates were unremunerative. They also filed, during the hearings, a joint tariff embodying the higher rates which they deemed reasonable. A suspension order issued; and the two proceedings were consolidated. On February 1, 1922, the Department of Public Works (by which the functions of the Commission had come to be exercised) made a report in which it found that the existing rates were highly remunerative. Thereupon it entered an order which, among other things, abrogated all the intrastate log tariffs then in force; cancelled the suspended joint tariff filed by the carriers; and established a uniform distance tariff applicable to these railroads, to remain in effect during an experimental period of twelve months, or until further order of the Department. The tariff so prescribed reduced greatly the rates theretofore prevailing. It was estimated that the revenues of the several carriers from this traffic would be lessened from 15 to 37 per cent. and that additional losses in revenue would result from changes prescribed concerning minimum loadings.

This suit was brought by the carriers against the Department, in the Superior Court of Thurston County, to

set aside the order on the ground, among others, that it deprived them of property in violation of the due process clause of the Fourteenth Amendment. The findings of fact upon which the order proceeded were attacked as arbitrary and unsupported by the evidence. The pre- scribed rates were assailed as confiscatory. *Northern Pa- cific Ry.* v. *North Dakota,* 236 U. S. 585. Upon the giving of bonds the court superseded and suspended the order, except in so far as it cancelled the joint tariff of higher rates filed by the carriers.[2] After full hearing the court entered a final decree denying the relief sought. This was affirmed by the Supreme Court of the State, three judges dissenting. 125 Wash. 584. The case is here under § 237 of the Judicial Code as amended. A motion to dis- miss on the ground that the judgment is not reviewable on writ of error was postponed to the hearing on merits. The motion is denied. *Bluefield Water Works & Im- provement Co.* v. *Public Service Commission,* 262 U. S. 679, 683. As to the merits, many errors are assigned. It will be sufficient to consider one.[3]

The log traffic is limited substantially to the section of the State lying west of the Cascade Mountains. The average length of its haul on each of these roads is not more than 32 miles. The three principal carriers pre-

---

[2] On May 16, 1922, the Interstate Commerce Commission entered an order reducing Washington interstate rates, *Reduced Rates, 1922,* 68 I. C. C. 676. Thereupon the Department of Public Works made, on June 22, 1922, a corresponding reduction in the intrastate log rates, but it provided specifically that, in view of the pending litiga- tion, this order should not apply to the carriers here involved. Second Annual Report of the Department of Public Works, p. 70, Appendix G.

[3] The character of the proceeding in the state court and the pro- visions of law applicable thereto are set forth in *Oregon R. R. & Navigation Co.* v. *Fairchild,* 224 U. S. 510. It was conceded, as was there held, that the legal proceeding prescribed by the State affords an adequate opportunity for testing by judicial review the lawful- ness of the order complained of.

sented evidence tending to show that their existing rates were so low as not to yield any return upon the property employed in the business; and that the rates did not defray fully the operating costs of the traffic and its proportion of the taxes payable. This evidence was in character persuasive. It was fairly specific, direct, and comprehensive. If the facts warranted, the shippers and the public officials might, of course, have shown by evidence of similar character that the carriers' evidence was inherently untrustworthy; or it might have been overcome by more persuasive evidence to the contrary. Little attempt was made to show that any testimony introduced by the carriers was inherently untrustworthy. Little conflict with the evidence of the carriers was developed by the evidence as to specific facts introduced for the shippers and the public. Apparently necessary inferences from specific facts established by the carriers were not explained away. The Department's findings concerning operating costs rested largely upon deductions from data found in published reports of the carriers and in their exhibits filed in this case. Instead of attempting to show by evidence, reasonably specific and direct, what the actual operating cost of this traffic was to the several carriers, the Department created a composite figure representing the weighted average operating cost per 1,000 gross ton miles of all revenue freight carried on the four systems and made that figure a basis for estimating the operating cost of the log traffic in Washington.[4] This was clearly erroneous.

A precise issue was the cost on each railroad of transporting logs in carload lots in western Washington, the average haul on each system being not more than 32

---

[4] The figure taken for the Oregon-Washington was the average cost per 1,000 gross ton miles of that company—not of the whole Union Pacific system. The lines of the Oregon-Washington are located in three States with an aggregate of 2,218 miles of road.

miles.  In using the above composite figure in the de-
termination of this issue the Department necessarily ig-
nored, in the first place, the differences in the average
unit cost on the several systems; and then the differences
on each in the cost incident to the different classes of
traffic and articles of merchandise, and to the widely
varying conditions under which the transportation is
conducted.  In this unit cost figure no account is taken
of the differences in unit cost dependent, among other
things, upon differences in the length of haul [5]; in the
character of the commodity; in the configuration of the
country; in the density of the traffic; in the daily loaded
car movement; in the extent of the empty car move-
ment; in the nature of the equipment employed; in the
extent to which the equipment is used; in the expendi-
tures required for its maintenance.  Main line and
branch line freight, interstate and intrastate, car load and
less than car load, are counted alike.  The Department's
error was fundamental in its nature.  The use of this
factor in computing the operating costs of the log traffic
vitiated the whole process of reasoning by which the De-
partment reached its conclusion.

The mere admission by an administrative tribunal of
matter which under the rules of evidence applicable to
judicial proceedings would be deemed incompetent,
*United States* v. *Abilene & Southern Ry.,* 265 U. S. 274,
288, or mere error in reasoning upon evidence introduced,
does not invalidate an order.  But where rates found by
a regulatory body to be compensatory are attacked as
being confiscatory, courts may enquire into the method
by which its conclusion was reached.  An order based

---

[5] On the Northern Pacific the average length of haul of all its
intrastate traffic in Washington was 99 miles; of all its traffic in
Washington, interstate and intrastate, 142 miles; of all its traffic on
the whole system, 334 miles.  Compare *Shepard* v. *Northern Pacific
Ry.,* 184 Fed. 765, 781–2.

upon a finding made without evidence, *The Chicago Junction Case,* 264 U. S. 258, 263, or upon a finding made upon evidence which clearly does not support it, *Interstate Commerce Commission* v. *Union Pacific R. R.,* 222 U. S. 541, 547, is an arbitrary act against which courts afford relief. The error under discussion was of this character. It was a denial of due process. Compare *New York & Queens Gas Co.* v. *McCall,* 245 U. S. 345, 348. The invalidity was not avoided by making the order, in terms, for an experimental period. The rates as to which the evidence was primarily directed were those in force before and during the hearings. If even the existing rates were confiscatory, as the carriers' evidence embodying the results of ample experience tended to show, there could be no reason for awaiting the test of the much lower rates which were prescribed. The cases which applied the principle of awaiting the result of an experimental period for untried rates have no application here. *Willcox* v. *Consolidated Gas,* 212 U. S. 19; *Northern Pacific Railway* v. *North Dakota,* 216 U. S. 579; *Cedar Rapids Gas Light* v. *Cedar Rapids,* 223 U. S. 655; *Louisville* v. *Cumberland Telephone Co.,* 225 U. S. 430, 436; *Brush Electric Co.* v. *Galveston,* 262 U. S. 443.

*Reversed.*