## GREAT FALLS GAS CO. v. PUBLIC SERVICE COMMISSION OF MONTANA et al.

District Court, D. Montana. August 23, 1929.

No. 585.

Gunn, Rasch, Hall & Gunn and E. G. Toomey, all of Helena, Mont., and I. W. Church and Fletcher Maddox, both of Great Falls, Mont., for plaintiff.

L. A. Foot and Francis A. Silver, both of Helena, Mont., for defendants.

Before DIETRICH, Circuit Judge, and PRAY and BOURQUIN, District Judges.

BOURQUIN, District Judge. This is the final hearing in a rate case. The evidence is that before the defendant commission, and additional before a master herein. It appears that for 19 years the plaintiff operated an artificial gas plant in the city of Great Falls, in capacity reasonably appropriate to the needs of its patrons, some 4,200 in number at the end of the period, at a profit less than a fair return. May 2, 1928, it substituted natural gas of heat units double those of artificial gas, at rates per M some 61 per cent. less than theretofore. In timely notice of the new rates, plaintiff's attitude was that greater demand would require it to expend much money in new construction; that several or three to five years would be required to extend and develop its plant and business to a point where a reasonable return on its investment could be expected, at rates fair to its patrons as well as to itself; and that in the meantime its new rates were warranted by good business policy, whether or not productive of a fair return.

Complaints of the new rates made, the commission on said date embarked on a hearing. Therein, no doubt taking its cue from plaintiff's notice aforesaid, the commission did not determine rates which would presently produce a fair return, but rates which might do so several or three to five years in future. To that end, its forecast exceeded plaintiff's 16 per cent. in the number of patrons that might be had and 52 per cent. in the amount of gas they might buy. Accordingly, October 25, 1928, the commission made an order reducing plaintiff's new rates some 11 per cent. and effective immediately. This suit to enjoin followed, based on grounds, among others, that the commission considered documents and facts not presented in evidence, allowed nothing for going concern value, and, determining rates future only, gave to them present and confiscatory effect.

Denying confiscation, defendants answer that at the hearing the inquiry was directed to the future, for that plaintiff's attitude and evidence was on the theory that, until after more than two years' extension and development, rates to produce a fair return could not be determined; that thereby plaintiff waived its right to a fair return for at least two years; and that, the commission having relied and acted upon plaintiff's attitude aforesaid, the latter is estopped to claim a fair return for at least two years. So obvious is it that neither waiver nor estoppel appears, decree for plaintiff could have been had on the pleadings, but for denial of confiscation.

■ It is an ancient maxim that any one may do as he will with his own, if harmless to others. But in that is no warrant to others to do the like, or to order it to be done. So, though for business or any other policy a public utility for a time may adopt rates less than fair return, a commission cannot constrain it to do so, much less fix lower rates. See Int., etc., Coms. v. Union P. Ry. Co., 222 U. S. 553, 32 S. Ct. 108, 56 L. Ed. 308; Banton v. Belt Line Ry. Corp., 268 U. S. 421, 45 S. Ct. 534, 69 L. Ed. 1020.

■■ The commission created by statute has only the power given by statute, and that is to fix reasonable rates presently productive of fair return. An established utility, like plaintiff, is entitled to rates producing fair return on a plant reasonably necessary for the services rendered and at the time rendered. Board of Public Utility Com'rs v. New York Tel. Co., 271 U. S. 31, 46 S. Ct. 363, 70 L. Ed. 808; McCardle v. Indianapolis Water Co., 272 U. S. 408, 47 S. Ct. 144, 71 L. Ed. 316. This is true, though the plant be capable of and probably will have great expansion. In such case, a rate

presently reasonable, on expansion may be excessive. A valid rate may become invalid, or vice versa. Galveston Electric Co. v. Galveston, 258 U. S. 400, 42 S. Ct. 351, 66 L. Ed. 678; Bluefield Water Works & Imp. Co. v. Public Service Commission, 262 U. S. 693, 43 S. Ct. 675, 67 L. Ed. 1176. The remedy, however, is not for the commission to fix a rate appropriate to expanded conditions future and prescribe it to present conditions, upon which it is confiscatory, but is to reduce a present reasonable rate only when expansion renders it excessive.

■ At this trial plaintiff's new rates had prevailed for over one year, and, though the parties widely differ in respect to valuations and allowances, they agree results did not equal the depreciation of either, to say nothing of amortization and fair return, and that fair return on either's estimates is a matter of some time future. The following table is of the first year:

|  | Plaintiff. | Defendants. |
|---|---|---|
| Rate base | $940,316 00 | $601,344 00 |
| Income, less operating expenses and local taxes Requirements. | 43,912 00 | 36,868 00 |
| Depreciation | 62,744 00 | 44,604 00 |
| Amortization | 27,727 00 | 20,000 00 |
| Fair return | 75,225 00 | 48,107 00 |
| Total | $165,696 00 | $112,711 00 |
| Deficit | $121,784 00 | $ 75,843 00 |

Defendants now urge that plaintiff's rates excited resentment and quasi boycott; that the commission's rates, averaging some 11 per cent. lower, would have been approved and would have created greater demand; and that they should be made effective during a test period.

Pretermitting defendants' departure from its answer, it is observed that during the first year plaintiff was diligent to extend its business; and made healthy growth in patrons and gas sold, the first increasing from some 4,200 to 4,800, and the second from some 77,698M feet to 368,603M feet. In addition it expended some $370,000 in extensions of its system for future needs, but of course this is not presently included in its rate base.

That the results from plaintiff's new rates were, are, and will be confiscatory is clear, and it is believed that they afford that "ample experience" which in Northern Pac. R. Co. v. Dept., 268 U. S. 44, 45, 45 S. Ct. 412, 69 L. Ed. 836, was held to obviate necessity to experiment with the regulating body's lower rates.

There is little evidence of antagonism to the new rates, and the difference between results and fair return is so great that it is not reasonably probable that the commission's lower rates would have produced a fair return, or would bridge the gap in reasonable time. Moreover, defendants' argument to the contrary is of little weight, when it is remembered its rates were fixed with an eye single to fair return in the future, when would be 7,000 patrons, each annually consuming 240,000 feet of gas. Evidently such rates could not produce a fair return on present conditions of 31 per cent. fewer patrons consuming 70 per cent. less gas. It is needless to analyze and compare the estimates of the parties, for on either is confiscation.

■ Nor would the result be different, to the extent of fair return, if plaintiff's values by it returned for taxation were taken as a basis for computation. Being less than 50 per cent. of the values by plaintiff claimed for rate-making purposes, they were properly received in evidence as admissions against interest. San Diego Land & Town Co. v. Jasper Case, 189 U. S. 443, 23 S. Ct. 571, 47 L. Ed. 892.

■ They well might serve to impeach plaintiff's valuations for rate-making, and to support the lower valuations of the commission's experts. Their evidentiary value in the light of all circumstances is for the commission to determine. The local law is that, for purposes of taxation, plaintiff shall make sworn return of the "true value" of its property. Both utility and society pay tribute each to the other, the first for taxes, the second for gas, both admeasured by the true value of utility property. There cannot be one true value for a return for taxation, and a different true value for rate-making. Every principle of reason and justice dictates that for both purposes that value must be and is one and the same. In this is no conflict with Missouri Rate Cases, 230 U. S. 498, 33 S. Ct. 975, 57 L. Ed. 1571. Errors in procedure or evidence before the commission seem immaterial, for in the United Fuel Gas Case, 278 U. S. 300, 49 S. Ct. 150, 73 L. Ed. 390, January 2, 1929, it is held that in confiscation rate cases the only issue is: Are the rates confiscatory? For if they are not, the utility is not injured, and, though the order imposing them be void, equity affords no relief. Northern Pac. R. Co. v. Dept., supra, indicates otherwise. Various other contentions by the parties made, including some question of items of operating expenses, are passed over, for that, however considered, the result is the same.

Plaintiff is granted a permanent injunction and costs, of course without prejudice to the commission's right to proceed to a new hearing when so advised.

Decree accordingly.