## BEAUMONT, S. L. & W. RY. CO. et al. v. UNITED STATES et al.

District Court, W. D. Missouri, W. D. November 19, 1929.

No. 1363.

F. H. Moore and W. E. Davis, both of Kansas City, Mo., E. T. Miller and M. G. Roberts, both of St. Louis, Mo., J. R. Bell and G. H. Muckley, both of Washington, D. C., H. H. Larimore, C. S. Burg and J. R. Turney, all of St. Louis, Mo., and Robert Thompson, of Dallas, Tex., for petitioners.

E. M. Reidy, Asst. Chief Counsel, Interstate Commerce Commission, of Washington, D. C., and Elmer B. Collins, Sp. Asst. to Atty. Gen., for defendants.

Frank H. Towner, Silas H. Strawn, P. F. Gault, K. F. Burgess, and Ralph M. Shaw, all of Chicago, Ill., J. Carter Fort, of Washington, D. C., G. M. Swanstrom and A. H. Lossow, both of Minneapolis, Minn., K. L. Richmond, of Chicago, Ill., and L. H. Strasser, of St. Louis, Mo., for interveners.

Before GARDNER, Circuit Judge, and REEVES and OTIS, District Judges.

·GARDNER, Circuit Judge. This is a suit to enjoin and set aside an order of the Interstate Commerce Commission entered "In the matter of divisions of freight rates in western and Mountain-Pacific territories. I.C.C. Docket 15234," which fixes a new basis for the divisions of joint rates applying on traffic between points in the southwestern and western trunk line territories, and of rates applying on traffic between points in southwestern territory and eastern territory but passing through western trunk line territory.

The Interstate Commerce Commission on its own motion, under date October 8, 1923, instituted an investigation for the purpose of determining whether the divisions of freight rates and charges in western and Mountain-Pacific territories were and for the future would be unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the various carriers made respondents in the proceeding. By supplemental or additional orders, other carriers were made respondents, and during the course of the proceedings an agreement was reached by the interested parties with respect to division of joint rates between points in western trunk line territory and points in Pacific Coast territory. Thereafter the investigation was limited to divisions in the aggregate north and south of Kansas City and St. Louis, Mo., and East St. Louis, Cairo, Gale, and Thebes, Ill., respectively, of joint rates between points in western trunk line territory generally east of the Missouri river and points in the southwest.

A certified copy of the testimony taken by the Commission at the hearings held in the territories involved has been offered and received in evidence in this case. The western trunk lines sought increases in their divisions, and these demands were resisted by the southwestern lines. As the result of this hearing the Commission found that the divisions of joint rates on freight traffic in general between points in the western trunk line territory and points in the southwest territory were unreasonable, and fixed a new basis for such division.

On petition for rehearing, the Commission, with some modifications, denied the petition and filed a report setting out the reasons for the modifications made and why the rehearing and reargument was denied, and final order was thereafter, on June 10, 1929, entered. It is to enjoin the enforcement of this order that the present suit is brought.

It may be said that by the new division fixed by the Commission's order, a higher percentage of joint rate is awarded the western trunk line carriers than was received by them under the division theretofore in effect.

Certain evidence has been offered on behalf of petitioners and received subject to the objections of respondents. We think the evidence was properly received and should be considered.

At the very threshold of this controversy, it seems necessary to consider the scope or limitation of the court's jurisdiction. This is not a proceeding of which this court would ordinarily have original jurisdiction. As a condition precedent to a consideration of the issues here presented, they must first have been presented to and passed upon by the Interstate Commerce Commission, which Commission has the power and jurisdiction to determine the preliminary and fundamental question of what is a just, reasonable, and equitable division of a joint rate. It has been said by the Circuit Court of Appeals of this circuit that the question of "just, reasonable and equitable division for the future is a legislative question which only the Commission may determine." What then

can this court consider in determining the validity of the order in question?

■ The original proceeding instituted by and before the Commission finds its statutory authority in section 15(6) of the Interstate Commerce Act. Title 49, § 15(6), USCA. This section, in part, reads as follows: "Whenever, after full hearing upon complaint or upon its own initiative, the commission is of opinion that the divisions of joint rates, fares, or charges, applicable to the transportation of passengers or property, are or will be unjust, unreasonable, inequitable, or unduly preferential or prejudicial as between the carriers parties thereto (whether agreed upon by such carriers, or any of them, or otherwise established), the commission shall by order prescribe the just, reasonable, and equitable divisions thereof to be received by the several carriers. * * * In so prescribing and determining the divisions of joint rates, fares and charges, the commission shall give due consideration, among other things, to the efficiency with which the carriers concerned are operated, the amount of revenue required to pay their respective operating expenses, taxes, and a fair return on their railway property held for and used in the service of transportation, and the importance to the public of the transportation services of such carriers; and also whether any particular participating carrier is an originating, intermediate, or delivering line, and any other fact or circumstance which would ordinarily, without regard to the mileage haul, entitle one carrier to a greater or less proportion than another carrier of the joint rate, fare or charge."

Manifestly, the determination of the ultimate issue was the reasonableness of the division of the joint rates between the carriers. This determination is a question on which the finding of the Commission is conclusive if supported by substantial evidence, unless there was some irregularity in the proceeding, or some error in the application of the rules of law. Skinner & Eddy Corp. v. United States, 249 U. S. 557, 39 S. Ct. 375, 63 L. Ed. 772; New England Divisions Case, 261 U. S. 184, 43 S. Ct. 270, 67 L. Ed. 605.

■ The Commission is not required to conform to the rules governing the weight or effect of evidence, and the admission of evidence, which in judicial proceedings would be incompetent, does not invalidate its orders. This court cannot, therefore, weigh the evidence, nor substitute its judgment for that of the Commission, nor inquire into the soundness of the Commission's reason, nor

the wisdom of its decision, but is limited to an inquiry as to whether or not the order is supported by substantial evidence, or whether there was some irregularity in the proceeding, or some error in the application of the rules of law. Western Chemical Co. v. United States, 271 U. S. 268, 46 S. Ct. 500, 70 L. Ed. 941; Assigned Car Cases, 274 U. S. 564, 47 S. Ct. 727, 733, 71 L. Ed. 1204; United States v. New River Co., 265 U. S. 533, 44 S. Ct. 610, 68 L. Ed. 1165.

As was said by the Supreme Court in Assigned Car Cases, supra, "These are matters left by Congress to the administrative 'tribunal appointed by law and informed by experience.'" The jurisdiction formerly vested in the commerce courts, and now vested in this court, is confined to determining whether there have been violations of the Constitution or the power conferred on the Commission by statute, or an exercise of such power so conferred so arbitrarily as to virtually transcend the authority conferred. Kansas City Southern R. Co. v. United States, 231 U. S. 423, 34 S. Ct. 125, 58 L. Ed. 296, 52 L. R. A. (N. S.) 1.

■ It will thus be seen that the scope of inquiry in this court is limited. The court must approve or disapprove of the order of the Commission, and is without power to modify it, and it is likewise without power to review the Commission's findings of fact further than to determine whether there is substantial evidence to sustain the order. Unless, therefore, there were material errors of law or a want of substantial evidence to support the order, the petition in this case should be denied.

■ It is urged by the petitioners that the Commission performed a quasi judicial function, and hence its action is subject to judicial review as to errors of law, including the charge of the insufficiency of the evidence or findings of fact. The respondents do not take serious issue with this contention, but insist that the Commission in performing that function met every requisite of the cases cited. It appears that a number of hearings were had, and a very voluminous record made comprising several thousand pages of transcript and nearly 300 exhibits. The petitioners were given opportunity to be heard or introduce any pertinent or competent evidence which they might wish to offer. But notwithstanding the fact that the function performed was quasi judicial, it is not for this court to weigh the evidence, nor to inquire into the wisdom or soundness of the conclusion reached by the Commission. As-

signed Car Cases, supra; Interstate Commerce Commission v. U. P. R. R. Co., 222 U. S. 541, 32 S. Ct. 108, 56 L. Ed. 308. Conceding that the petitioners had the right to a full hearing, it seems clear that they were given such a hearing.

It is next urged that the Commission's order should be set aside because the amount of revenue which will accrue to petitioners will not be as much as 17 to 20 per cent. greater revenue per ton mile than the revenue accruing to the western trunk lines, but will be not more than 9 per cent. greater, whereas the Commission found that in 1924 it cost about 15 per cent. more per ton mile to transport freight in the southwest than in the western trunk line territory. Evidence other than that offered before the Commission was offered and received in this court in support of this contention.

In support of this contention counsel have stressed one or two statements found in the opinion of the Commission. Attention is called to the fact that the Commission has determined the relative cost of service as a vital thing to be ascertained, and that the cost is approximated within certain limits so far as ascertainable. These two elements are then selected as the test, and the only test, for the basis of the order, and it is contended that because the order does not in practical operation produce with mathematical accuracy the results anticipated by the Commission, it should be set aside. It should be observed in this connection that in this attack all other factors or elements are not only subordinated, but eliminated and disregarded. While the relative cost of service in the two groups was a vital thing to be ascertained, it does not follow that the solution of the Commission's problem was dependent entirely, and only on this determination. Vital as this factor may have been, it does not follow that the result of the Commission's order should, in disregard of every other factor, mathematically produce a result which reflects the difference in the cost of service in the two groups. The Commission itself, on petition for rehearing, considered this question, and in the second report it is said: "There are other matters to be considered such as the efficiency with which the carriers concerned are operated and the importance to the public of the transportation service of such carriers, but all of these we took into consideration in summarizing the pertinent evidence. * * * We realized that the statistics were open to criticism in certain respects and resolved doubts in favor of the carriers whose revenues would be reduced by our finding, i. e., the Southwestern lines. The final result was not the product of statistics alone but was reached in the exercise of judgment after considering all of the pertinent evidence." The finding of the Commission as to the relative cost of service was simply an approximation and purported only to be such, and the Commission's report does not indicate that the difference in the cost of service should be reflected in the distribution of revenue.

Counsel contend that the Commission found that, "The Southwestern respondents are entitled to an average of 17 or 20 per cent. greater revenue per ton mile of freight transported than are the Western Trunk Line respondents." This is not warranted by the actual finding of the Commission, which is that, "Cost of service, including a fair return on investment, was somewhere in the neighborhood of 20 per cent. greater in the southwest than in the Western Trunk line group, based on averages of 1923–1924 operations, and somewhere in the neighborhood of 17 per cent. greater based on 1924 operations."

Cost of service is not analogous to revenue per ton mile. Revenue per ton mile varies of necessity with the length of haul, and the cost of service is made up of the cost of terminal operations, which is substantially the same, regardless of the length of haul and the cost of line haul, which varies materially with the length of haul. The combination of these factors produces the cost per ton mile, which varies with the length of haul, but not in direct ratio. Counsel are relying upon the so-called September, 1928, test. In passing it may be observed that this test may or may not have been typical. The time covered was confessedly short, and there are many factors going into the compilation of the exhibit which purports to reflect the result of the operations for the period mentioned.

It is, however, observed that the average length of haul of the southwestern lines, as reflected by this test, was a little more than 50 per cent. greater than the average length of haul on the western lines. If we may assume the same cost of service in both territories, still the cost per ton mile on traffic for the southwestern lines would be materially less than the corresponding cost for the western trunk lines, for the reason that there is a longer average haul in the southwestern territory. Divisions based on cost of service would therefore yield the southwestern lines the same revenue per ton mile for the longer hauls as the western trunk lines received for

their shorter hauls, and hence divisions which would yield the southwestern lines on this traffic 9 per cent. more revenue *per ton mile* than the western trunk lines, the result claimed under the test would reflect a cost of service in the southwest higher than that in the western trunk line territory by much more than 9 per cent.

It seems clear that a formula using the cost per ton mile would, under the circumstances, produce a result unfair to the western trunk lines because of the shorter average haul on these lines.

It is apparent that the Commission had this matter in mind. In its report it is said: "Stated differently, under the existing divisional basis and judged by a mileage prorate, a mile in southwestern territory is worth on the average from 129 to 135 per cent. of a mile in Western Trunk Line territory. Nor does this fully indicate the relative advantage of the southwestern lines, for a mileage prorate is *by no means a perfect method of dividing joint rates, even where transportation and other conditions do not differ materially.* It results in the same ton-mile revenue for each participating carrier, *regardless of the length of haul and of the principle that, other things being equal, ton-mile yields should decrease as distance increases.*"

Bearing in mind that the showing reflecting the test of September, 1928, is prepared on the ton-mile basis, it would seem pertinent to observe what the Interstate Commerce Commission says on this question in New England Divisions Case, 126 I. C. C. 579, 667: "A mileage prorate is an unsatisfactory test when the hauls are short on one side and long on the other. Throughout this proceeding both complainants and defendants have seemed to lose sight of the significance of relative lengths of haul, especially when referring to ton-mile yields. Such yields are continually compared in the briefs with no mention of the lengths of haul, without which the comparisons are meaningless."

The Commission was not permitted to base its decision as to divisions of joint revenue upon any one thing, either cost of service, necessity, density of traffic, or any other single fact or element. The statutes required the Commission to give due consideration to all factors, and the Commission's report shows affirmatively that it has done so in this case. As was said by the Supreme Court in the Louisville-Nashville Case, 227 U. S. 88, 33 S. Ct. 185, 189, 57 L. Ed. 431, "For the validity of the order does not necessarily

depend upon the correctness of each of these findings, so that the breaking of one or many links by disproof would destroy the chain upon which the order depended."

We are clear that the validity of the order cannot be made to depend alone upon a division of revenue which would exactly reflect the approximate division in cost of service.

██ The Commission is a body informed as to railroad conditions and with railroad problems. As was said by the Supreme Court in O'Keefe v. United States, 240 U. S. 294, 36 S. Ct. 313, 317, 60 L. Ed. 651, "A tribunal such as the Interstate Commerce Commission, expert in matters of rate regulation, may be presumed to be able to draw inferences that are not obvious to others."

It is not for the court to substitute its judgment for that of the Commission. As was said in Wallower v. United States (D. C.) 32 F.(2d) 524, 530, "The Commission is an expert body, with a national vision." In Virginian R. R. Co. v. United States, 272 U. S. 658, 47 S. Ct. 222, 225, 71 L. Ed. 463, it is said: "This court has no concern with the correctness of the Commission's reasoning, with the soundness of its conclusions, or with the alleged inconsistency with findings made in other proceedings before it."

██ It is next contended that the order is void because it is based on averages, and does not take into consideration each individual carrier either on the basis of typical evidence or specific evidence, and in this connection it is urged that to make a divisional order valid the Commission must consider whether the divisions are just and reasonable from the standpoint of each carrier which participates in the joint rate. We think this contention is completely answered by the Supreme Court in New England Divisions Case, 261 U. S. 184, 43 S. Ct. 270, 275, 67 L. Ed. 605.

It appears from the record that the hearings were conducted on the basis of a group proposition. No attempt was made to have the individual carriers treated separately. All witnesses purported to represent all of the southwest carrier respondents. One of the witnesses who was in fact connected with the traffic department of the Santa Fé Railway says: "The Southwestern Lines, believing a history in so far as it is available, of the class rates * * * would be helpful in reaching a decision in this proceeding, submit the following. * * *" Another witness connected with the traffic department of the Missouri Pacific testified: "The South-

western Lines found it necessary to assign the testimony with respect to divisions to individual carriers, depending upon the gateways or states of the Southwest in which their line is more vitally interested. * * * My testimony will therefore include all of the interested Southwestern Lines in connection with the divisions via the several gateways and Southwestern states previously mentioned."

These are indicative of the manner in which the petitioners presented the case before the Commission. At no time during the proceedings before the Commission was any claim made that the Commission was without authority to deal with the case on a group basis. In fact, this question was not even presented to the Commission in the petition for rehearing. The suggestion that the petition filed asking the Commission to make additional southwestern carriers parties was tantamount to an objection to the consideration of this matter on the group basis is, we think, without force. There is no claim in this petition that the Commission was without jurisdiction because it failed to name additional carriers, and the basis for the petition was that unless all the roads were made respondents, those which were respondents would have difficulty with their connections in arranging subdivisions of revenue in the event of an order by the Commission changing the divisions. Until the present action was commenced, the petitioners did not indicate in any way that they objected to the handling of the case on a group basis. In the New England Divisions Case, supra, among other things, it is said: "Obviously, Congress intended that a method should be pursued by which the task, which it imposed upon the Commission, could be performed. The number of carriers which might be affected by an order of the Commission, if the power granted were to be exercised * * * might far exceed 600; the number of rates involved, many millions. The weak roads were many. The need to be met was urgent. To require specific evidence, and separate adjudication, in respect to each division of each rate of each carrier, would be tantamount to denying the possibility of granting relief. We must assume that Congress knew this; and that it knew, also, that the Commission had been confronted with similar situations in the past and how it had dealt with them. * * * That there is no constitutional obstacle to the adoption of the method pursued is clear. Congress may, consistently with the due process clause, create rebuttable presumptions. Mobile, Jack-

son & Kansas City R. R. Co. v. Turnipseed, 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; and shift the burden of proof, Minneapolis & St. Louis R. R. Co. v. Railroad & Warehouse Commission, 193 U. S. 53, 24 S. Ct. 396, 48 L. Ed. 614. It might therefore, have declared in terms that, if the Commission finds that evidence introduced is typical of traffic and operating conditions, and of the joint rates and divisions, of the carriers of a group, it may be accepted as prima facie evidence bearing upon the proper divisions of each joint rate of every carrier in that group. Congress did so provide, in effect, when it imposed upon the Commission the duty of determining the divisions. For only in that way could the task be performed. As pointed out in Railroad Commission of Wisconsin v. Chicago, Burlington & Quincy R. R. Co., 257 U. S. 563, 579, 42 S. Ct. 232, 66 L. Ed. 371 [22 A. L. R. 1086], serious injustice to any carrier could be avoided, by availing of the saving clause which allows anyone to except itself from the order, in whole or in part, on proper showing."

The Commission's order does not preclude independent southwestern lines from hereafter showing to the Commission any injustice that may result from its application. By its terms it is to remain in effect until the further order of the Commission. We are warranted in assuming that the order in this case is based upon evidence which the Commission assumed was typical in character and ample in quantity to justify the finding made as to each division of each rate of every carrier. It is well established that individual rates or divisions, which are typical of all, afford a proper basis for a finding as to any one. The record in this case shows every essential mentioned by the Supreme Court in New England Divisions Case, 261 U. S. 184, 43 S. Ct. 270, 67 L. Ed. 605; Orient Divisions Case, 265 U. S. 274, 44 S. Ct. 565, 68 L. Ed. 1016, and Brimstone Divisions Case, 276 U. S. 104, 48 S. Ct. 282, 72 L. Ed. 487.

All of the tariffs in effect at the time of the hearing were stipulated into the record before the Commission. The division sheets put in evidence the application of the divisions contained in these sheets to the rates carried in the tariffs, as made in the case of individual shippers, were shown in detail, and evidence of this character was offered both by the representatives of the western

trunk lines and representatives of the southwestern lines.

It is to be noted that these documents so offered in evidence covered all carload traffic moving in June and October, 1924, over respondent's lines between western trunk line territory and southwestern territory, and showed the total revenue, junction, originating and delivery line, commodity, origin, destination, weight, haul north and south of the junction, revenue as divided, revenue per mile, tons hauled one mile, and similar statistical information. With respect to each respondent carrier, these statements not only showed typical examples of each division of each rate of every carrier, but showed an actual cross-section of actual traffic moving in the two average months of 1924. In fact, it appears that the statements in evidence were of the same character as the September, 1928, test put in the record before this court as Exhibit 10, on which the petitioners relied as adequately showing exactly what will happen under the new division prescribed by the Commission's order.

The record is replete with statistical information and statements showing rates and divisions applicable to individual commodities shipped in volume between the two territories. Much of this evidence is reflected in Exhibit I filed in this court by petitioners. Of the 289 exhibits offered in evidence before the Commission, great numbers of them reflect the very details mentioned in the decisions relied upon by petitioners.

We think it clear that the Commission assumed that the record was ample in quantity and substantially typical to justify the order entered as to each of the carriers, and, as before noted, the case would seem to be ruled by the New England Divisions Case, supra, and we think all other contentions of counsel with reference to this question are met and answered by the decision in the New England Case and no good purpose would be served by a further consideration of the subject.

The contention that because all carriers having mileage in the western trunk line territory and the southwestern territory were not made respondents, it was impossible for the Commission to make a group order, is answered by the decision in the New England Case and the Orient Divisions Case, supra. In neither of these cases were all the railroads made parties.

It is urged that there was no testimony before the Commission with regard to the importance to the public of the transportation services of each of respondents, and hence the order cannot be sustained, and that the order is not in the public interest. Paragraph 6 of section 15 of the Interstate Commerce Act provides that the Commission shall give due consideration, among other things, to "the importance to the public of the transportation services of such carriers." The question of public interest would not be susceptible of direct proof, but must be gathered from all the facts and circumstances, and is made up of many factors. The statements and exhibits put in evidence before the Commission would seem to reflect every aspect of the commercial importance of the transportation involved in the hearing. These exhibits include a series of maps showing the lines of the various roads, together with divisional groups in the two territories. A casual glance at these maps shows that practically all of the railroad mileage in the central section of the United States is operated by the carriers participating in the hearing. The exhibits show the vast amount of freight handled between the two territories. It appears that in the year 1925 the western trunk line respondents operated over 48,000 miles of railroad and the southwestern lines operated nearly 49,000 miles of railroad; that the property investment of the western trunk lines was $3,432,475,212, and the property investment of the southwestern line respondents was $3,403,862,855; that during 1925, the public paid the western trunk lines $867,887,503 for transportation services performed, and likewise paid the southwestern lines $863,242,535 for transportation services performed. This is also shown for the three previous years. These lines furnished the railroad transportation in a region comprising nearly one-third of the area of the United States.

It would seem inevitably to follow from this testimony that the railroad transportation service involved was of the utmost public importance and would not require the direct testimony of any witness to this fact. It is a conclusion based upon the facts appearing in this record that cannot be escaped.

The Commission in its opinion says that it had taken into consideration all the circumstances mentioned by the statute so far as the record made it possible so to do. The public being interested in the transportation service involved and the efficiency thereof, it may be assumed that the Commission, in making its order, had in mind that the public interest would be served, and this conclusion, whether wise or imprudent, is based upon evidence in the record and cannot be re-

viewed by this court. The Commission found that the divisions were not just, reasonable, nor equitable, and having so found, it was authorized, under paragraph 6 of section 15 of the Interstate Commerce Act, on public hearing to change the divisions so as to cure the injustice, unreasonableness, and inequality found to exist. The Commission attempted at least by this order to cure this unlawful condition, and such a change would certainly be in the public interest. The mere incidental fact that some of the southwestern lines making a lesser rate of return than some of the western trunk lines may lose money is not a controlling factor. The same contention was made in the New England Divisions Case, supra, in which the Supreme Court sustained the Commission's order.

██ A general charge that the proceeding was so arbitrary and contrary to the purposes of the Interstate Commerce Act as to be a denial of due process of law is argued by counsel, and in support of this contention it is urged that the order transfers revenue from less prosperous to more prosperous carriers. This has already been discussed and we think is controlled by the New England Divisions Case. The western trunk line carriers were found by the Commission to be in worse financial condition than the southwestern lines, and this finding is not challenged. The order only incidentally affects the revenues of the companies involved and was not entered for the primary purpose of assisting one group of carriers over another group of carriers, but to correct an inequitable and unreasonable division found to exist. Whether or not this order was ill advised, or whether it will produce a systematic basis of divisions, is not for this court to determine, but was a matter committed by the statute to the judgment of the Commission. In our opinion, the order cannot properly be held to be arbitrary, but is based upon evidence upon which the judgment of the Commission might properly be exercised.

██ It is also urged by the petitioners that the Commission exceeded its authority in prescribing minimum divisions to be received by the western trunk line respondents. Paragraph 6 of section 15 of the Interstate Commerce Act provides that, "The Commission shall by order prescribe the just, reasonable, and equitable divisions thereof to be received by the several carriers." The Commission under this statutory authority was authorized to fix the divisions as it has done. The cases cited by counsel for petitioners do not involve divisions, and were in fact decided prior to the enactment of the Transportation Act of 1920 (41 Stat. 456).

It is to be observed that the western trunk lines are not complaining of this action of the Commission fixing the minimum divisions that they may receive, and it would not seem to be a matter of which the southwestern lines can properly complain.

██ There is a suggestion that the order of the Commission is confiscatory as to the petitioners. This question does not seem to have been urged before the Commission, and the purpose of the order is not to take from one set of carriers revenue and transfer it to another. The most that can be claimed as to the evidence on this point is that it shows that certain of the railroads earn less than 5¾ per cent. upon their total investment. This is not a sufficient basis for assailing the order in question. N. P. R. R. Co. v. Dept. of Public Works, 268 U. S. 39, 45 S. Ct. 412, 69 L. Ed. 836. There is no showing that the reduction in their share of revenue arising from traffic moving between the western trunk line territory and the southwestern territory will operate in any way to confiscate petitioner's property.

██ Petitioners urge that the refusal of the Commission to grant a rehearing was an abuse of discretion and a denial of due process of law. Ordinarily the granting or denying of a petition for rehearing is discretionary. It is apparent that the petition was given careful consideration and some modifications of the order were made pursuant to this application. It cannot be said that the proceeding is lacking in due process of law and the matter is not reviewable here.

██ The contention that the Commission went outside the record in entering its order is made, and the Orient Divisions Case, (United States v. Abilene & So. Ry. Co.) 265 U. S. 274, 44 S. Ct. 565, 569, 68 L. Ed. 1016, is cited in support of this contention. It is said by counsel that the commission assumed, without evidence, that the book values of the southwestern lines were on a less conservative basis than the book values of the carriers in the central western and northwestern regions. What the Commission in fact said was that in Revenues in Western District, 113 I. C. C. 1, it had said that railroad book values in the southwest were on a less conservative basis than in the central west and northwest regions. The Commission does not so find in this case, and it would seem that it was warranted in referring to its own decisions here, and it does not accept such finding as evidence in the case under consideration.

The argument of counsel is therefore based upon a misapprehension of the record. It is also contended that the Commission prescribed a rate prorate based upon percentages of the first-class rates under the southwestern rate scale, whereas that scale was not in evidence. But the Commission did not prescribe a rate prorate, and it has answered this argument in its second report in answer to the petition for rehearing. There it is said: "This criticism rests upon a misunderstanding of what we did. Our formula was merely a method of adjusting the divisions to what we believed upon the evidence, to be a fair approximation of difference in conditions in the two territories." In other words, this was a part of the mechanism and not a part of the substantive evidence.

The decision was not bottomed upon the southwest scale, but it is the contention of the petitioners that the Commission had no authority to use the scale even as a mechanical device or method for dividing the rates in the proportion warranted by the facts, without first notifying the southwestern lines of their intention so to do. This suggestion is entirely without merit.

It is next urged that the Commission did not have before it evidence showing the cost of operation on respondent's lines confined to the western trunk line territory. This argument is not based upon the assumption that the Commission went outside of the record, but that the evidence in the record did not justify the conclusion reached by the Commission. The statistics presented by both groups of carriers were system figures which included the investment and results of operation upon these lines outside of those territories. This was unavoidable and a segregation was found to be impracticable. The point is referred to by the Commission in its second report in the following language: "Reverting to the criticisms in the petition, we were compelled to use system statistics because the carriers were unable to segregate the interchange traffic and show the respective costs of service for that alone and no offer of such segregated costs is made in the present petition. Moreover, these system figures were voluntarily presented by both groups of carriers as pertinent and important evidence. We were also obliged to use system statistics which spread over into other territories, because of the difficulty of obtaining representative statistics closely confined to the two groups. The Western Trunk Lines did attempt such a segregation and we use the results as shown above as one of the checks upon our conclusions but the South-

western Lines objected to these figures as not sufficiently representative."

Again the Commission, in its second report, says: "We realized that the statistics were open to criticism in certain respects and resolved doubts in favor of the carriers whose revenues would be reduced by our findings, i. e., the Southwestern Lines. The final result was not a product of the statistics alone, but was reached after considering all of the pertinent evidence."

It is thus observed that the petitioners offered these statistics in evidence and the conclusion of the Commission is not confined to such evidence. The fact that the statistics cover systems might go to the weight of the testimony, but not to its admissibility.

It is charged that the Commission went outside of the record, in that it gave consideration to certain statistics of the Great Northern, Northern Pacific, Western Pacific, and Union Pacific Railroads. Reference to these statistics is made in the second report of the Commission, and they were referred to in response to charges made in the petition for rehearing to the effect that the operations of the western trunk lines in territory west of the western trunk line territory were not carried on under as favorable conditions as were these operations in the western trunk line territory. The use of the figures in the second report does not affect the merits of the Commission's order. The decision had already been made with respect to the divisions involved in this case.

The second report discussed the petition for rehearing and the grounds for denying same, but it modified its first report with respect to overhead traffic handling. These modifications were in no manner affected by the statistics quoted from the Great Northern, Nothern Pacific, Western Pacific, and Union Pacific roads. The Orient Divisions Case relied upon by petitioners condemned the use of evidence necessary to establish the essential facts, when such evidence had not been properly introduced, but the statistics here referred to were not so used.

It is also claimed that the Commission went outside of the record in assuming that operating conditions upon certain parts of the Wabash and Illinois Central Railroads lying without western trunk line territory were more favorable than operating conditions in western trunk line territory. The matter is referred to by the Commission in its second report in the following words: "The Southwestern Lines now object to this statement upon the ground that we assumed with-

out evidence that conditions are more favorable in official territory than in Western Trunk Line territory and that the operations of the Illinois Central in the Mississippi Valley are conducted under more favorable conditions than its operations in Western Trunk Line territory." The first report made no such reference, but did say that the Wabash extended beyond the eastern boundary of the western trunk line territory into official territory with its more favorable operating conditions. The Wabash is shown to be an eastern line. In the Orient Divisions Case it is said: "The parts of the annual reports in question were used as evidence of facts which it was deemed necessary to prove, not as a means of verifying facts of which the Commission, like a court, takes judicial notice." Manifestly the Commission's reference to those operating conditions was in the nature of a criticism on the cost figures presented to the Commission, but notwithstanding this criticism, the figures were accepted. There was no necessity of any proof with respect to the operating conditions on the Wabash Railway in official territory, and the statement complained of did not constitute a finding, and the decision is not dependent upon any such alleged assumption as to these operating conditions.

■ The contention that the density figures for 1927 referred to by the Commission in its first report were not in the record does not seem to be warranted by the record. The report of the Commission shows that: "Upon the argument it was stipulated that we might refer in the decision of the case to reports on file with us which had been received since the close of the hearings. Such reports make it possible to compare traffic densities for 1927 computed in the same way as those shown above for 1924."

In the Commission's second report it is said: "The data referred to are incorporated in special reports now secured annually by our Bureau of Statistics. We believe that the stipulation was broad enough to cover these reports." Without further reference to the record, it seems sufficient to say that these records were properly before the Commission.

The propriety of using a mileage scale which assumes a decrease in unit cost as mileage increases is challenged by counsel for petitioners. This question is not, in our opinion, properly before the court for review. The Commission's decision, in answer to a criticism of the method used, in its second report says: "As has already been explained, our rate prorate formula was adopted as a mechanism for dividing the joint rates in the proportions which we found justified by the facts of record. In our opinion it is an appropriate mechanism for that purpose." The argument of counsel is therefore apparently based upon a misapprehension of the use by the Commission of the rate prorate formula.

■ It is urged that the order should be set aside at least so far as the Chicago, Milwaukee, St. Paul & Pacific Railroad is concerned, because that company is a reorganized company coming into being during the proceedings in this case. It succeeded the Chicago, Milwaukee & St. Paul Railway Company and took over the property of that company. The Chicago, Milwaukee & St. Paul Railway Company went into receivership during the proceedings, and on April 12, 1927, the Chicago, Milwaukee, St. Paul & Pacific Railroad Company filed application with the Commission asking for authority to acquire control of the property of the old company, and this authority was granted January 4, 1928. The property of the two companies was identical and the objection is purely technical. The Chicago, Milwaukee, St. Paul & Pacific Railroad Company has made no objection. Even in the petition for rehearing this point was not urged, and it cannot now be fairly considered as a ground for vacating the order.

■ The contention that the order is vulnerable because it prescribes the division of joint rates on traffic to and from points east of the Indiana-Illinois state line is based upon a misapprehension. The order provides that the shares of joint rates on the overhead traffic shall be determined in accordance with the formula prescribed by the Commission. The oral evidence taken in this court is to the effect that these rates divide on the Mississippi river and the revenue accruing to the carriers east of the river is eastern revenue and the revenue accruing to the carriers west of the river is western revenue, and that the roads receiving it are known as western carriers. In its first report the Commission held that on the overhead traffic in question the shares accruing to the western lines should be determined on a formula which the Commission prescribed. The order, particularly in connection with the oral testimony offered, is not uncertain, it does not purport to affect the revenue accruing to the so-called eastern lines, and hence it was not necessary that the eastern lines should have been made parties to the proceeding. There is no merit in this contention.

■ Charging that the decision of the Commission is based upon such incompetent and

unreliable evidence and conjectures as to render it wholly void, counsel present an extended argument, citing many authorities. Many fragmentary portions of the Commission's decision are quoted, and many criticisms are indulged in, based upon the alleged uncertainties of the Commission's decision. It is true that the Commission frankly admits that it could not possibly reach a definite statement of relative cost of handling the particular traffic involved in the two territories. This was an impossibility which should not, however, deprive the Commission of its authority and duty to act. The Commission considered all the facts of record, which presumably were such facts as could be submitted by either group, and if the facts were not more definite it was due to the character of the testimony presented. The doctrine announced in the Northern Pacific Case, 268 U. S. 39, 45 S. Ct. 412, 69 L. Ed. 836, is not apposite. In that case an attack was made on an order of the Commission, and the railroads were under the necessity of showing, by specific proof applicable to the traffic affected by the order, that the rates were confiscatory. However, no such burden rested upon the Commission in the instant case. It presumably gave proper consideration to all the facts adduced, and based upon these facts it rendered its decision. It is not suggested that more definite, satisfactory, or persuasive evidence could have been offered. The Commission in its report says: "Obviously it is impossible to employ any mathematical formula which will operate with precision, and it is necessary to be guided by general judgment after considering and weighing as well as we can the evidence before us." This we take it properly describes the duty of the Commission, and presumably nobody was better qualified to act upon the evidence than this Commission, with its expert knowledge and "national vision."

As has already been noted, the Commission is not bound by technical rules of procedure or evidence, and it is not expected nor required that its decisions can be tested by any mathematically correct rules. It was therefore not incumbent upon the Commission to produce a definite, positive statement of the difference in cost of handling traffic in the two territories involved. Neither was it essential that it state the exact differences in the traffic density and weight to be attached thereto, but the Commission is endowed with power and authority to consider and weigh all the evidence, facts, and circumstances, apply its expert knowledge and experience to the situation, and reach a conclusion and judgment based thereon.

We have carefully considered all of the other objections urged to the Commission's order, but a discussion thereof would unduly extend this opinion. The authority exercised by the Commission was so exercised in conformity to the requirements of due process of law, was within the broad discretion vested in the Commission, and its order is sustained and the petition dismissed.