## NATIONAL LABOR RELATIONS BOARD v. BELL OIL & GAS CO. *

No. 8712.

Circuit Court of Appeals, Fifth Circuit.

July 29, 1938.

Charles Fahy, Gen. Counsel, National Labor Relations Board, Robert B. Watts, Associate Gen. Counsel, National Labor Relations Board, and David McCalmont, Jr., National Labor Relations Board, all of Washington, D. C., for petitioner.

C. J. Brannan and O. R. Tipps, both of Wichita Falls, Tex., for respondent.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

HOLMES, Circuit Judge.

The petitioner seeks to enforce its order against respondent under section 10 (c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. §§ 151 et seq. and 160(c). The jurisdiction of this court is based upon section 10(e) of the act, 29 U.S.C.A. § 160(e).

The nature of the business of respondent, as affecting interstate commerce, was described by this court in a prior decision involving an order of the Board against this respondent and two other oil companies who were jointly operating a repressure plant.[1] The jurisdictional facts here are not materially different from those in said decision, and, upon the authority of that case, we find that the Board had jurisdiction in this matter. We, therefore, turn to the merits of the controversy.

The order appealed from directs the respondent to cease and desist from unfair labor practices in violation of rights guaranteed to employees in section 7 of the act, 29 U.S.C.A. § 157, and to take the following affirmative action:

"(a) Offer to Frank T. Grozier, E. H. Haynie and Roy W. Bowman, and each of them, immediate and full reinstatement, respectively, to their former positions, without prejudice to any rights and privileges previously enjoyed;

"(b) Make whole the said Frank T. Grozier, E. H. Haynie and Roy W. Bowman, and each of them, for any losses of pay they have suffered by reason of their discharge on September 27, 1935, by payment to each of them, respectively, of

---

[1] National Labor Relations Board v. Bell Oil & Gas Co., 5 Cir., 91 F.2d 509.

408

a sum of money equal to that which each would normally have earned as wages during the period from the date of his discharge to the date of such offer of reinstatement, computed at the wage rate stated in the findings of fact as the rate each was paid at the time of his discharge, less the amount, if any, earned subsequent to discharge as shown in the findings of fact; and in the event of any dispute as to the amount of such back pay due, the dispute shall be laid before this Board for determination of the amount of such wages properly due each such employer under the terms of this Order."

We have read the voluminous record of the proceedings. It opens with a petition by the Board for the enforcement of its order. Annexed thereto is a transcript of the proceedings in which the order was made. There was a charge, an amended charge, and a second amended charge, filed by the International Association of Oil Field, Gas Well and Refinery Workers of America, Local No. 258, and seven alleged employees. Upon the second amended charge, a complaint and notice of hearing were issued by the Board. The trial examiner's appointment, the respondent's answer and supplemental answer, a transcript of the oral testimony, the trial examiner's report, amended complaint, the decision of the Board, its findings of fact and conclusions of law, exceptions thereto, order overruling such exceptions, and all other proceedings are set out in the record in extenso. It is necessary to deal only with the complaint and the evidence in support of it.

The complaint, as amended, after setting forth facts which show the interstate character of the business, alleges that respondent, while engaged in the course and conduct thereof, refused to employ, discharged, and refused to reinstate seven employees (including the three named in the order above quoted), for the reason that they, and each of them, joined and assisted said labor organization, and engaged in concerted activities with other employees for the purpose of collective bargaining and other mutual aid or protection; that, by such discharge and refusal to employ, the respondent did interfere with, restrain, and coerce its employees in the exercise of rights guaranteed in section 7 of said act, 29 U.S.C.A. § 157, and did thereby engage in an unfair labor practice within the meaning of section 8, subdivision (1) of said act, 29 U.S.C.A. § 158(1); and, further, did thereby discriminate in regard to hire and tenure of employees, thus discouraging membership in said labor organization and engaging in an unfair labor practice within the meaning of section 8, subdivision (3) of said act, 29 U.S.C.A. § 158(3).

The complaint also charged that respondent refused to bargain collectively with the employees, thereby violating subdivision (5) of section 8 of said act, 29 U.S.C.A. § 158(5); but this charge was dismissed by the Board itself at the close of the hearing. It also dismissed the complaint with reference to four of the men who were found to be employees of some one other than respondent. The complaint as to them was dismissed without prejudice to their rights to file charges against their employers. Therefore, the order to cease and desist, as well as to reinstate the three remaining employees, with back pay, and without prejudice as to their seniority rights, depends for its validity upon the existence in the record of evidence to support the findings of the Board that respondent refused employment to, discharged, and refused to reinstate them because of union membership or activities.

The trial examiner, who sat for six days and heard all of the testimony in this case, recommended that the entire complaint against the Bell Oil Company be dismissed. He found that it had not refused to bargain collectively with its employees; that four of complainants were never employed by it; that two of the other three were not reinstated because their employer thought they were inefficient; that the third was not re-employed as one of the pumpers in the production department because, after the shut-down caused by the strike, the company used only three pumpers, instead of four, and that, since all four were union men, if Haynie had been re-employed, some other union man would not have been.

The trial examiner found that Grozier was not re-employed because he had been making numerous mistakes as gauger; that his record would have justified the company in discharging him prior to the strike, but that it hesitated to do so until he voluntarily quit. The Board held that the mistakes Grozier "made in entering

seal numbers on run tickets were ordinary clerical errors which all gaugers make"; that they were "the result of the nature of the job rather than carelessness or inefficiency." This finding is not supported by relevant or material evidence.

Grozier admitted that, in the spring of 1935, he was called into the office and told that he was making entirely too many errors, and that, unless he improved, the respondent would have to get somebody else for the job. He admitted that, after this, he made further errors, and that these errors caused irreparable injury to the company. Upon being asked by his attorney to explain fully to the examiner about these errors, he said:

"In going to these tanks and in running this oil and in placing these seals on the record, this gauging is more or less of a messy job to get this oil on your hands and on this seal, and there is no attempt to conceal that any more than carelessness, and putting these numbers on those tickets without getting my hands clean I might get the wrong seal number down on the ticket; that is the discrepancy."

Then came the evidence upon which rests the finding of the Board that these errors resulted from the nature of the job rather than from inefficiency or carelessness. It is not only opinion and hearsay evidence but an expression as to how the witness feels about whether he made more mistakes than were generally made in that line of work. It is as follows:

"Q. (By Examiner) Do other gaugers make the same mistakes as a general rule? A. To the best of my knowledge.

"Q. (By Examiner) Do you feel like you make more mistakes than are generally made in that line of work? A. I could not say that I do, no.

"Q. You don't know either way? A. No, Sir, those are matters we just hear of. I knew I made them and that others made them, but as to comparisons of numbers I would not be in a position to say."

In the argument before the trial examiner, the Government's counsel admitted the sincerity of respondent in assigning Grozier's inefficiency as a reason for his not being returned to work. The trial examiner found this to be the reason, not only as to Grozier, but as to Bowman, who admitted his carelessness, and characterized it as such, in running oil over the tanks at Grandfield, and who further admitted shortages which he attributed to a leak on the line.

It is clear that respondent's property was injured during the strike; that the stripper wells in this field were thereby somewhat depleted; and that operations in the production department were reduced from 24 to 8 hours a day. In these circumstances, since fewer employees were needed to operate the plant, the respondent had the right to exercise a choice between efficiency and inefficiency. There is no substantial evidence that this right of selection was arbitrarily exercised so as to work a discrimination against Bowman, Haynie, or Grozier on account of union membership or activities. Hearsay and non-expert-opinion evidence may not be used in this court as a basis to support the findings of the Board upon which rests an order sought to be enforced. Cf. United States v. Abilene & Southern Railway Co., 265 U.S. 274, 286–290, 44 S.Ct. 565, 568-570, 68 L.Ed. 1016.

The statute provides that the findings of the Board as to the facts, if supported by evidence, shall be conclusive in this court.[2] While there is no limitation as to the character of the evidence necessary to support the findings, it is not reasonable to think that irrelevant or immaterial evidence will meet the requirements. In the same paragraph, provision is made for the court to order additional evidence to be taken before the Board, upon a showing to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce it in the hearing before the Board. Such additional evidence must be made a part of the transcript; the Board may modify its findings by reason of the additional evidence so taken; and it shall file such new or modified findings, which, if supported by evidence, shall be conclusive.

While it is provided in subdivision (b) of section 10, 29 U.S.C.A. § 160(b) that, in proceedings before the Board, the rules of evidence prevailing in courts of law or equity shall not be controlling, the provision in subdivision (e), that application to the court for leave to adduce ad-

---

[2] Sec. 10(e), 29 U.S.C.A. § 160(e), supra.

ditional evidence shall be accompanied by a showing that such evidence is material, indicates the intention of Congress with reference to the nature of the evidence required to support the findings of the Board. One sentence follows the other in the same paragraph, and there could have been no intention on the part of Congress for the court to consider only material evidence in the one instance, and a different sort or quality of evidence in the other. The conclusion is irresistible that, unless supported by relevant and material evidence, the findings of the Board as to the facts are not conclusive.

■ While technical rules of evidence which thwart justice should be abolished, it would be impossible for courts to function if all limitations upon the scope of evidence were removed. To stop needless delays, expedite business, and keep prejudice from creeping into the trial, it is necessary for courts to stay within the bounds of relevancy. Fair rules of evidence are essential in a judicial hearing. Without them, the proceeding is more or less of an inquisition.

■ Congress intended for the administrative and quasi-judicial proceedings before the Board to be free, within constitutional limitations, from the ordinary rules of evidence, but upon petition to the court, and the filing therein of a transcript of the entire record,[3] the nature of the proceeding is changed and becomes wholly judicial. Thereupon, the court is vested with exclusive jurisdiction of the cause and of the questions determined, and to be determined, therein. There is nothing in the statute to indicate that this court should consider irrelevant, immaterial, or incompetent evidence in this suit, for that is what it is, a suit to enforce an order of the Board, arising under a law of the United States.

■ Since there is nothing in the statute indicating an intention to modify the rules of evidence prevailing in courts of law or equity, they are controlling in this case. The evidence to support a finding of the Board should furnish a reasonably sound basis from which the facts in issue may fairly be inferred. A good rule for weighing the evidence to ascertain whether it is adequate for the purpose mentioned is to compare it with the evidence necessary to sustain the verdict of a jury upon a similar issue. Such evidence must be substantial. A scintilla of evidence which creates a mere suspicion, or evidence which gives equal support to inconsistent inferences, is not sufficient. Appalachian Electric Power Co. v. National Labor Relations Board, 4 Cir., 93 F.2d 985.

The petition to enforce the order of the Board is denied and the order set aside.

---

[3] In re National Labor Relations Board, 58 S.Ct. 1001, 82 L.Ed. —, May 31, 1938.