**NATIONAL LABOR RELATIONS BOARD v. ROURE–DUPONT MFG., Inc.**

No. 25, Docket 22377.

United States Court of Appeals
Second Circuit.

Argued Oct. 14, 1952.

Decided Nov. 7, 1952.

632

Thomas F. Maher, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Asso. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Dominick L. Manoli, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Harold L. Luxemburg, New York City, for respondent.

Before AUGUSTUS N. HAND, CHASE, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

Pursuant to § 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e), the National Labor Relations Board seeks enforcement of its order against respondent, Roure-Dupont Manufacturing, Inc., a manufacturer and distributor of perfumes and related products. Upon review of the lengthy hearing before a Trial Examiner, the Board found that respondent had violated § 8(a) (1) of the Act, 29 U.S.C.A. § 158(a) (1)—the provision against interference with collective bargaining—by offering its employees individual employment contracts and conditioning payment of its regular Christmas bonus on acceptance of these contracts in order to induce the employees to withdraw from Local 65 of the Wholesale and Warehouse Workers Union. The Board further found a violation of this provision, as well as of the provision against discrimination in employment, § 8(a) (3), 29 U.S.C.A. § 158(a) (3), in respondent's discriminatory refusal to rehire six employees who had gone out on strike. Ac-

cordingly, the Board ordered respondent to reinstate these employees with back pay, to pay them a bonus amounting to three weeks' wages in compensation for the Christmas bonus which had been denied them, and to cease and desist from future violations of the Act. 93 N.L.R.B. 1240.

Resisting enforcement of this order, respondent charges that the Trial Examiner's bias and hostility rendered the hearing before him unfair. Respondent further contends that the record does not contain substantial evidence to support the Board's findings and order in respect to reinstatement and payment of the Christmas bonus.

■ In support of its charge of bias against the Trial Examiner, respondent relies on the cumulative force of various rulings against it during the protracted hearings followed by the Examiner's unfavorable Intermediate Report and Recommended Order. Three rulings seem particularly stressed: (1) the Examiner's refusal to grant a three months' continuance until respondent's president returned from Europe; (2) his denial of respondent's request for a bill of particulars; and (3) his permitting amendment of the Board's complaint after several of the Board's witnesses had testified to include the issue as to the Christmas bonus. We find no abuse of discretion in any of these rulings. As to the requested continuance, almost three weeks had elapsed between the time respondent was notified of the hearing and its president's departure for Europe; his testimony could thus easily have been preserved by deposition during this period. Further, although the president was actually subpoenaed for the hearing by the Board's General Counsel several days before he sailed, and although before he left he armed counsel with an affidavit asking for delay, he made no attempt to obey the subpoena or procure its withdrawal; rather he left it to new trial counsel, employed after his departure, to make the first request for adjournment. Similarly, denial of respondent's request for a bill of particulars was not prejudicial, since respondent had previously been supplied orally with the requested information. Amendment of the Board's complaint was also properly al-

lowed; this simply conformed the pleadings to proof which had already been adduced. Cf. Fed.Rules Civ.Proc., rule 15(b), 28 U.S. C.A. The Christmas bonus issue was fully litigated at the hearing and there was no showing of surprise which may have hampered presentation of respondent's defense on this aspect of the case. None of these or other rulings demonstrate that respondent was deprived of a fair hearing. Examination of the typewritten transcript shows that the Examiner was faced with a tactic of unusual and persistent delaying action on the part of resourceful counsel, and that he exercised no more firmness than the circumstances required.

■ The Board was also justified in ordering reinstatement of six of the striking employees. Respondent was under no obligation to rehire strikers who had been permanently replaced or whose jobs had been abolished during the strike. N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381; Kansas Milling Co. v. N. L. R. B.; 10 Cir., 185 F.2d 413. But when an employer promises to rehire striking employees as soon as their positions again become available, he may not discriminatorily violate this undertaking. Wilson & Co. v. N. L. R. B., 7 Cir., 124 F.2d 845; see also our decision in N. L. R. B. v. E. A. Laboratories, 2 Cir., 188 F.2d 885, certiorari denied E. A. Laboratories v. N. L. R. B., 342 U.S. 871, 72 S.Ct. 110. Here the record supports the Board's finding that respondent made such a promise and that it was unconditionally accepted by the strikers. Yet, when respondent gradually replenished its depleted working force, it failed to keep its word and discriminated against the strikers by hiring outsiders instead.

■ Vacancies did, in fact, occur for each of the six former employees subsequent to the strike. Four of these had worked as laboratory assistants. During the strike and for a month after it ended on February 24, 1949, their tasks were temporarily handled by three employees who had remained at work. In May, 1949, respondent hired four new laboratory assistants without offering to reinstate any of the former employees. At the time each of

these new workers was hired, respondent discriminated against the replaced employees, in violation of the provisions of the Act cited above. In this respect we disagree with the Board, which found that, as to three of the laboratory assistants, such violation occurred immediately upon termination of the strike. The Board took the position that the three employees who took over the laboratory workers' tasks during and after the strike "can not be considered as occupying the positions permanently, but only as temporary replacements for three of the striking laboratory assistants, whose positions were therefore available for them on February 25, 1949." This conclusion does not appear to us to be supported by the evidence. The substitute employees admittedly continued their "temporary" functions for a month after the strike ended. And the record is devoid of any evidence showing that respondent's business had become sufficiently revitalized after the strike to accommodate the employees whose positions the Board finds available on February 25. On the contrary, the evidence shows that respondent had lost a substantial amount of business because of the strike and that its operations only gradually returned to normal. Respondent is entitled to have its business condition immediately after the strike taken into consideration in connection with its obligation to reinstate strikers. See N. L. R. B. v. Bell Oil & Gas Co., 5 Cir., 98 F.2d 406, rehearing denied 98 F.2d 870; N. L. R. B. v. American Creosoting Co., 6 Cir., 139 F. 2d 193, certiorari denied American Creosoting Co. v. N. L. R. B., 321 U.S. 797, 64 S.Ct. 937, 88 L.Ed. 1086.

Hence, we hold that the four laboratory assistants were not discriminated against until outside replacements were hired on May 3, 9, 16, and 23. We agree with the Board's finding as to the time when discrimination occurred against the other two employees, Peters and Thompson. Respondent discriminated against Peters when, on May 2, it hired Hannon to do the work he had done previously. Thompson was permanently replaced during the strike by Irise, but should have been offered reinstatement when Irise left on April 29. Instead, on May 3, respondent hired Stanton, and thus discriminated against Thompson as of that date. While Stanton was apparently not replaced when he left respondent's employ on June 17, 1949, the fact that two men were successively hired to perform Thompson's work indicates that his job continued to exist and should have been made available to him at the time Stanton was hired.

Our view of the times at which respondent discriminated against the various employees requires some modification of the Board's back pay order. Each of the laboratory assistants is entitled to receive the wages which he has lost since he was replaced. The payment to the assistant with the greatest seniority should be retroactive to May 3, the next in line to May 9, then May 16, and finally May 23. The provision in the Board's order dealing with back payments to Peters and Thompson also requires clarification. As already pointed out, the Board found that the discrimination against these two men occurred on May 2 and 3 respectively. But in its order the Board adopts the "Remedy" set forth in the Trial Examiner's Recommended Order, which made payments to all of the employees retroactive to February 24. To correct this apparent oversight, the Board's order is hereby modified so as to replace the February 24 reference with the appropriate dates in May, 1949.

We come finally to the validity of the provision requiring respondent to pay each of the six employees a bonus amounting to three weeks' wages to compensate for the lost Christmas bonus. Threats to withhold bonus benefits if workers embrace unions unpalatable to management have long been held a form of interference violating § 8(a) (1) of the Act. See N. L. R. B. v. Bird Mach. Co., 1 Cir., 161 F.2d 589, 591; R. R. Donnelley & Sons Co. v. N. L. R. B., 7 Cir., 156 F.2d 416, 418, certiorari denied 329 U.S. 810, 67 S.Ct. 624, 91 L.Ed. 692; N. L. R. B. v. Winona Knitting Mills, 8 Cir., 163 F.2d 156, 161; Swift & Co. v. N. L. R. B., 10 Cir., 106 F. 2d 87, 92, 93. The record here amply supports the conclusion that respondent used the promise of the Christmas bonus, which,

it asserts, had been previously cancelled, to induce employee desertion of the Union. Only the respondent's office manager and four employees who repudiated the Union actually received bonuses, though these were delayed until early the following year.[1] This evidence we think sufficient to sustain the Board's finding that the 1948 Christmas bonus was discriminatorily withheld from the striking employees. In view of this fact the Board properly ordered respondent to compensate the six employees for the unpaid bonus.

Respondent challenges the Board's finding that the bonus should amount to three weeks' pay. We see no objection to this provision. The bonus paid to employees who remained with the employer amounted to three weeks' wages, and in one case to two and one-half weeks' wages. Previous bonuses had generally varied from two to eight weeks' pay. The Board's order therefore finds adequate support in the evidence.

Order modified and enforced as modified.

1. The office manager received his bonus in January, 1949, and the other four received theirs in April, 1949. The Board properly rejected respondent's contention that these were Easter rather than delayed Christmas bonuses in view of the office manager's testimony that he did not receive a bonus in April because he had already drawn one in January.