215 F.2d 734
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
HADDOCK-ENGINEERS, Limited, and Associated IV, Joint Venturers and Operative Plasterers' and Cement Masons' International Association, AFL, Local Union 797, Respondents.
 No. 14066.
 United States Court of Appeals Ninth Circuit.
 September 21, 1954.
 
 George J. Bott, Gen. Counsel, David P. Findling, Assoc. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Samuel M. Singer, Alvin Lieberman, Nancy M. Sherman, Attys., NLRB, Washington, D. C., for petitioner.
 Peart, Baraty & Hassard, Alan L. Bonnington, San Francisco, Cal., John W. Bonner, Bonner & Rittenhouse, Las Vegas, Nevada, for respondent.
 Before DENMAN, Chief Judge, and BONE and ORR, Circuit Judges.
 DENMAN, Chief Judge.
 
 
 1
 The National Labor Relations Board, hereafter the Board, seeks enforcement of its order against Haddock-Engineers, Limited, hereafter the Company, and Operative Plasterers' and Cement Masons' International Association, AFL Local Union 797, hereafter the Union. The Company does not resist the enforcement.
 
 
 2
 The Board's complaint against the Union alleged its jurisdictional requirement that it was engaged in commerce, in paragraph II of its complaint, as follows: "II. Respondent Company is engaged in commerce within the meaning of Section 2(6) and (7) of the Act." The defendant Union's answer joined issue as to the Board's jurisdiction by the following denial: "I. Said defendant does not have sufficient knowledge or information upon which to base a belief as to the allegations contained in Paragraphs I and II, and therefore, upon such grounds denies the same."
 
 
 3
 The section of the Act referred to in the Board's complaint provides:
 
 
 4
 "(6) The term `commerce' means trade, traffic, commerce, transportation, or communication among the several States, or between the District of Columbia or any Territory of the United States and any State or other Territory, or between any foreign country and any State, Territory, or the District of Columbia, or within the District of Columbia or any Territory, or between points in the same State but through any other State or any Territory or the District of Columbia or any foreign country.
 
 
 5
 "(7) The term `affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 29 U.S.C.A. § 152(6, 7).
 
 
 6
 The Union's answer denied other allegations of the Board's complaint of the Union's wrongdoing and makes contentions here adverse to its findings and the order sought to be enforced. These we are not required to consider since we think the Board failed as to the Union to maintain its burden of proof to establish that it had jurisdiction to complain of the Union's actions.
 
 
 7
 To establish the jurisdictional requirement that the Company was engaged in commerce, the Board offered in evidence a letter written by John Carew, Administrative Assistant to the Company, in which was enclosed a form supplied by the Board, signed by Carew, containing the following statement: "The following relate only to the project herein involved: (a) Date project started, 6-2251, estimated date of completion, 4-1552; (b) average number of employees, 500; (c) value of materials used on project, $2,900,000.00 est.; (d) value of materials shipped from outside the state, $2,795,000.00 est.; * * *"
 
 
 8
 One McGrath, an employee of the Union, testified concerning this knowledge of an interstate business of the Company, as follows:
 
 
 9
 "Q. (By Mr. Brooks): Based on your non-technical knowledge of the materials that went into the project and non-technical knowledge of the availability of the type of material in this state, would you be willing to state that a large percentage of the materials that went into the project were shipped to Nevada from outside of the State of Nevada?
 
 
 10
 "Mr. Bonner: Same objection.
 
 
 11
 "Trial Examiner Doyle: Overruled.
 
 
 12
 "Q. (By Mr. Brooks): What was your answer? A. Of that I have no knowledge whatsoever.
 
 
 13
 "Q. Do you have knowledge of any steel plants in Nevada? A. No.
 
 
 14
 "Q. So that the steel in that project all came from outside of Nevada?
 
 
 15
 "Mr. Bonner: The witness testified he didn't know. Argumentative.
 
 
 16
 "Trial Examiner Doyle: Overruled.
 
 
 17
 "Q. (By Mr. Brooks): All the steel that went into the project came from outside the State of Nevada, didn't it? A. I don't know, frankly, I don't. You are asking me some things that are entirely outside of my department. I could say to the best of my belief that it probably did, but I don't know. That is some thing that was not in my department. I am not trying to be evasive at all, Mr. Brooks, but if you will ask personnel questions, maybe I can help you." (Emphasis supplied.)
 
 
 18
 Later McGrath identified Carew's signature to the statement above quoted and it was admitted in evidence over the Union's objection that it was hearsay.
 
 
 19
 The Union's answering brief strongly contends that the Company's failure to deny the allegation of the Board's complaint concerning the Company's interstate commerce is not binding on the Union on the issue raised by the Union's answer to the Board's jurisdiction. The Board filed no reply brief, evidently realizing that in a Board proceeding the Company is not the agent of the Union with power to make admissions for the Union. Cf. N. L. R. B. v. Sterling Electric Motors, 9 Cir., 112 F.2d 63; Id., 9 Cir., 114 F.2d 738.
 
 
 20
 The Union's brief, so not answered by a reply brief of the Board, further contends that its jurisdiction cannot be established by such hearsay evidence as the above letter from a company employee enclosing his statement of the Company's interstate business. In this the Union is clearly correct. In Consolidated Edison v. Labor Board, 305 U.S. 197, 229-230, 59 S.Ct. 206, 217, 83 L.Ed. 126, the Court stated:
 
 
 21
 "The companies urge that the Board received `remote hearsay' and `mere rumor'. The statute provides that `the rules of evidence prevailing in courts of law and equity shall not be controlling'. The obvious purpose of this and similar provisions is to free administrative boards from the compulsion of technical rules so that the mere admission of matter which would be deemed incompetent in judicial proceedings would not invalidate the administrative order. [Citing cases.] But this assurance of a desirable flexibility in administrative procedure does not go so far as to justify orders without a basis in evidence having rational probative force. Mere uncorroborated hearsay or rumor does not constitute substantial evidence." (Emphasis supplied.)
 
 
 22
 The law so stated had been so held by the Fifth Circuit in N. L. R. B. v. Bell Oil & Gas Co., 98 F.2d 406, 407, 409; Id., 98 F.2d 870, 871. It was so held in this Ninth Circuit in N. L. R. B. v. Washington D. Food Co., 118 F.2d 980, 985. In N. L. R. B. v. Cantrall, 9 Cir., 201 F.2d 853, 855, we considered such hearsay but only in connection with other substantial corroborative admissible evidence.
 
 
 23
 The Administrative Procedure Act, 5 U.S.C.A. § 1006(c) provides:
 
 
 24
 "* * * Any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence and no sanction shall be imposed or rule or order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence. * * *"
 
 
 25
 Of this the Sixth Circuit, referring to this and other statutes in Pittsburgh S. S. Co. v. National Labor Relations Bd., 180 F.2d 731, 733, stated: "The statutes were designed to eliminate the wholesale use of hearsay, the drawing of expert inferences not based upon evidence, and the consideration of only one part or one side of the case."
 
 
 26
 Since the Board failed to establish its burden of proof by competent evidence on the issue of its jurisdiction raised by the Union, we refuse to enforce the Board's order as to the Union. Since the Company filed no brief opposing the Board's order we order it enforced as to the Company.